JORGE DE LA CRUZ FIGUEROA, demandante y recurrente, *v.* JAMES A. TORO SINTES y EMILIO ORTIZ ALFONSO, demandados y recurridos.

*Número:* R-81-485     *Resuelto:* 28 de abril de 1982

*José E. de la Cruz Skerret* y *Santiago Polanco Abreu*, abogados del recurrente; *José Ramón Quiñones Coll* y *José A. Fernández Paoli*, de *Martínez Álvarez, Fernández Paoli, Menéndez Monroig, Menéndez Cortada & Lefranc Romero*, abogados del recurrido Emilio Ortiz Alfonso; *James A. Toro Sintes*, recurrido, *pro se*.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

Plantea el presente recurso si el derecho exclusivo a la azotea o limitaciones en áreas comunes de un edificio sujeto al régimen de propiedad horizontal confieren a determinados condóminos la facultad de cerrar los accesos a dichas áreas. Resolvemos que razones de seguridad pública prevalecen sobre tales derechos o limitaciones al uso común y que ningún condómino tiene facultad para cerrar los accesos a dichas áreas.

Se trata de una demanda de *injunction* instada por el aquí recurrente Jorge de la Cruz Figueroa para obligar a la remoción, o a que se le entreguen llaves, de determinados portones y una puerta instalados en los pisos noveno y décimo del Condominio Dos Torres, sito en la avenida Fernández Juncos en San Juan, sometido al régimen de propiedad horizontal. Se demandó a Emilio Ortiz Alfonso, titular del apartamento LPH-2 (*penthouse*) al cual se le confirió el uso exclusivo de un área de azotea inmediatamente encima, para obligarle a remover un portón y una puerta de madera instalados entre el pasillo del piso décimo, en que ubica el apartamento, y la referida azotea.

Se demandó además a James A. Toro Sintes para obligarle a remover un portón que instaló en el piso noveno, en que radica un apartamento de su propiedad, que impedía el acceso a las escaleras del condominio. Dicho portón fue luego reubicado por el demandado Toro Sintes en un área de descanso de la escalera, pero continuó alegando el demandante que al así hacerse se limitó el acceso entre el ascensor y dicha escalera. Los pasillos y escaleras en que se colocaron dichos portones constituyen áreas comunes limitadas del Condominio Dos Torres. El demandante es condómino residente del piso octavo.

Al desestimar la demanda, concluyó el tribunal sentenciador que, en cuanto al portón y puerta del piso décimo, sus llaves están siempre accesibles para dar mantenimiento a elementos comunes, aunque el codemandado Ortiz Alfonso mantiene el control efectivo de dicha puerta y portón. Concluyó además que se instalaron para "evitar riesgos de accidentes que podrían sufrir las personas que entraran a dicha azotea sin supervisión, especialmente los niños que residen en el condominio Dos Torres". Determinó como cuestión de hecho en cuanto al portón del piso noveno, que "de la forma en que está ubicado actualmente dicho portón no se impide el libre acceso a las escaleras del condominio entre los distintos pisos". Nada resolvió sobre la alegación del demandante de que su reubicación por el codemandado Toro Sintes impide el acceso del ascensor a la escalera.

La causa de acción del demandante estuvo predicada principalmente en fundamentos de seguridad, por cuanto dicha puerta y portones cierran vías de escape en casos de fenómenos naturales, tales como terremotos, o los causados por el error humano, como los incendios. Sobre el particular determinó el tribunal sentenciador, como cuestión de hecho:

15. Que en el condominio Dos Torres nunca ha surgido una situación catastrófica o de fenómenos naturales impre-

decibles que pudieran poner en peligro inminente de muerte o grave daño corporal a los residentes del condominio Dos Torres, de mantenerse los susodichos portones en los lugares donde ubican.

Señaló el tribunal en sus conclusiones de derecho que "los daños alegados son meramente especulativos y remotos y no justifican la concesión de los remedios solicitados, máxime cuando de la prueba desfilada sí se desprende que nunca ha surgido una situación 'impredecible de fenómeno natural o catastrófico' en el condominio Dos Torres". Citó a continuación *Martínez et al.* v. *Soto*, 32 D.P.R. 607 (1923), y *Jordán* v. *Rodríguez*, 32 D.P.R. 619 (1923).

Al solicitar reconsideración de la sentencia desestima-toria de su demanda, solicitó el demandante que se tomara conocimiento judicial de un "Informe de Inspección" pre-parado por el Servicio de Bomberos de Puerto Rico, División de Prevención de Incendios, en que se concedieron quince días al Condominio Dos Torres para, entre otras cosas, "eliminar los portones ubicados en el piso #10, que conduce a la azotea por la escalera de emergencia" y "eliminar el portón ubicado en el pasillo del piso #9 [que] . . .está frente al elevador". Se amparó dicho requerimiento en el Art. 10, Sec. 10.01 del Reglamento de Prevención de Incendios adoptado en virtud de la Ley Núm. 158 de 9 de mayo de 1942 (25 L.P.R.A. secs. 311–322). Considerada la moción de reconsideración, fue denegada luego de argu-mentos escritos de las partes.

Por resolución de 10 de diciembre de 1981 concedimos plazo a los demandados recurridos para mostrar causa por la cual no debíamos expedir el auto de revisión instado por el demandante y revocar o modificar la sentencia recu-rrida. Éstos comparecieron oportunamente mediante sen-dos escritos. Los hemos considerado, pero no nos persuaden para que alteremos el criterio que adelantamos. Veamos.

■ Atenderemos primeramente lo referente al Informe de Inspección del Servicio de Bomberos. Notamos que la

sentencia fue dictada el 26 de agosto de 1981, copia de su notificación fue archivada en autos el 3 de septiembre de 1981, y el Informe tiene fecha de 14 de septiembre de 1981. Es decir, el mencionado informe se produjo después de dictada y notificada la sentencia. Ello no hubiese impedido que el tribunal tomara conocimiento judicial del mismo si se hubiese tratado de un hecho adjudicativo de los previstos por la Regla 11 de Evidencia. (¹)

■  El requerimiento hecho en dicho informe para la eliminación de los portones parte de hechos controvertidos en el pleito. No se trata de hechos "de conocimiento general" ni "susceptibles de determinación inmediata y exacta recurriendo a fuentes cuya exactitud no puede ser razonablemente cuestionada", que son los hechos adjudicativos de que puede tomarse conocimiento judicial bajo la citada Regla 11. El informe está basado en una inspección hecha con posterioridad a haberse registrado y notificado la sentencia. Es de suponer que dicha inspección se hiciera a instancia de la parte demandante. Como prueba de la situación de los portones y de la deseabilidad de que sean removidos, el informe pudo ser objetado a base de la Regla 61 de Evidencia. (²) De todas maneras, no era propio tomar conocimiento judicial del informe.

---

(¹) Dispone dicha Regla 11, en sus apartados (A) y (D) como sigue:

"(A) Los tribunales podrán tomar conocimiento judicial de hechos que no son razonablemente objeto de controversia por:

"(1) Ser de conocimiento general dentro de la jurisdicción territorial del tribunal, o

"(2) ser susceptibles de determinación inmediata y exacta recurriendo a fuentes cuya exactitud no puede ser razonablemente cuestionada.

.         .         .         .         .         .         .         .

"(D) Los tribunales podrán tomar conocimiento judicial en cualquier etapa de los procedimientos, incluyendo la etapa apelativa."

(²) Dicha Regla 61 dice:

"Salvo que por ley se disponga otra cosa, no será admisible prueba de referencia sino de conformidad con lo dispuesto en este Capítulo. Esta regla se denominará 'regla de prueba de referencia'."

■ El demandante acompañó, además, su moción de reconsideración, con copia del Art. 10 del Reglamento de Prevención de Incendios, adoptado en virtud de la ley que creó el Servicio de Bomberos de Puerto Rico, Ley Núm. 158 de 9 de mayo de 1942 (25 L.P.R.A. secs. 311 a 322). Aunque la disposición que permite tomar conocimiento judicial en cualquier etapa de los procedimientos aparece como un apartado de la Regla 11 —que se refiere a hechos adjudicativos— nadie discute que también se puede tomar conocimiento judicial de cuestiones de derecho bajo la Regla 12.(³) El mencionado Reglamento fue promulgado en virtud del Art. 4 de la citada ley, 25 L.P.R.A. sec. 314, que en su inciso 11 dice lo siguiente:

> El Jefe de Bomberos queda además por la presente autorizado para establecer reglas y formular reglamentos *para la observancia de las debidas condiciones de seguridad* y para evitar incendios en sitios de recreo y deportes, en las industrias, establecimientos comerciales, en los edificios destinados a exhibiciones o a espectáculos públicos y *casas apartamientos residenciales*, vías públicas y hogares, y estas reglas y reglamentaciones tendrán su efecto de ley, luego de haber sido promulgadas por el Gobernador y publicadas en dos periódicos de circulación general en el Estado Libre Asociado. Toda infracción a cualquiera de las reglas y reglamentos, establecidos por el Jefe de Bomberos, aprobados y promulgados por el Gobernador, se castigará con multa no menor de cinco (5) dólares, ni mayor de cien (100) dólares o en su defecto, con cárcel por un período no menor de cinco (5) días, ni mayor de noventa (90) días, o ambas penas a discreción del tribunal. (Énfasis suplido.)

(³) La Regla 12 dispone:

"(A) Los tribunales estarán obligados a tomar conocimiento judicial de la Constitución y leyes del Estado Libre Asociado de Puerto Rico y de la Constitución y leyes de los Estados Unidos de América.

"(B) Los tribunales podrán tomar conocimiento judicial de las leyes y el derecho de los estados y territorios de los Estados Unidos de América, así como de las reglas y reglamentos del Estado Libre Asociado de Puerto Rico y de los Estados Unidos de América."

Tomamos conocimiento judicial del citado Reglamento, según enmendado el 13 de septiembre de 1973, que en su Sec. 10.01 dispone:

*Sección 10.01. Obstrucción de Medios de Salida*

A— Ninguna persona pondrá en ningún momento impedimento alguno delante de, ni en ninguna escalera de escape, balcón o escalera destinada a salida de incendio.

Como puede verse, esta sección no contempla específicamente obstrucciones del acceso a las azoteas de los edificios, pero no podemos abstraernos a la realidad de que las azoteas pueden ser en un momento dado la única vía de escape de los residentes y ocupantes de un edificio de varios pisos, que se encuentren en los pisos superiores al ocurrir un incendio en los pisos más bajos. Dijimos en *Consejo de Titulares* v. *Vargas*, 101 D.P.R. 579, 586 (1973), escolio 7:

Una azotea abierta y despejada que permitió el descenso de helicópteros fue elemento decisivo entre la incineración y la vida de cientos de ocupantes en el incendio de julio pasado en el multipisos de Avianca, en Bogotá, Colombia.

La revisión que en septiembre de 1973 se hizo del citado Reglamento de Prevención de Incendios tuvo como marco anticipado el pavoroso incendio del Hotel Roma en el Viejo San Juan, en la madrugada del 29 de julio de 1973, de que se ocupó a grandes titulares la prensa de nuestro país, de lo cual también tomamos conocimiento judicial. La prensa informó que siete personas perecieron carbonizadas o sofocadas y otras muchas sufrieron heridas de gravedad al hallar clausuradas las posibles salidas de escape. El periódico El Mundo, en su edición del martes 31 de julio de 1973 comentó editorialmente:

Pero queremos oír más sobre las medidas que ha de tomar el Gobierno para eliminar lo que en inglés se llama "fire traps", aquellas edificaciones desprovistas de los medios adecuados de escape, en caso de suscitarse incendios.

■ No alcanzamos a comprender la importancia que dio el tribunal de instancia a que "en el condominio Dos Torres nunca ha surgido una situación catastrófica o de fenómenos naturales impredecibles que pudieran poner en peligro inminente de muerte o grave daño corporal" a sus residentes. Que sepamos, tampoco habían ocurrido tales sucesos en los multipisos Avianca de Bogotá y Roma de San Juan. Algunos fenómenos naturales, como los huracanes, pueden anticiparse con razonabilidad, y ello permite tomar precauciones de última hora. Los incendios se producen accidentalmente o se causan intencionalmente, y pueden no dar tiempo para buscar llaves y abrir portones que obstruyan vías de escape. Es sabio y debe tenerse presente el dicho popular: "más vale prevenir que tener que remediar".

Se argumenta en la oposición al recurso, en cuanto a la azotea, que al constituirse el condominio bajo el régimen de propiedad horizontal se reservó su uso exclusivo al titular del apartamento LPH-2, y se invoca el derecho de propiedad de dicho condómino bajo el Art. 280 del Código Civil, 31 L.P.R.A. sec. 1111, (4) y lo resuelto en *Arce* v. *Caribbean Home Const. Corp.*, 108 D.P.R. 225, 245 (1978), sobre la obligación de los adquirentes de un condominio bajo régimen de propiedad horizontal de acatar lo dispuesto en la escritura de constitución como pacto al cual se adhieren. No aceptamos que ese derecho de uso exclusivo tenga el alcance que se le pretende dar.

El Art. 11 de la Ley de Propiedad Horizontal, Núm. 104 de 25 de junio de 1958 (31 L.P.R.A. sec. 1291i), establece como principio general que las azoteas son

---

(4) Dispone:

"La propiedad es el derecho por virtud del cual una cosa pertenece en particular a una persona con exclusión de cualquiera otra.

"La propiedad concede el derecho de gozar y disponer de las cosas sin más limitaciones que las establecidas en las leyes.

"El propietario tiene acción contra el tenedor y el poseedor de la cosa para reivindicarla."

elementos comunes generales, y por excepción permite estipulaciones en contrario. Dice dicho artículo, en lo aquí pertinente:

Se consideran elementos comunes generales del inmueble:

. . . . . . . .

(c) Los sótanos, azoteas, patios y jardines, salvo disposición o estipulación en contrario.

. . . . . . . .

■ El derecho de uso exclusivo de la azotea, que por estipulación. en contrario de su condición de elemento común, se concede a un determinado apartamento —un *penthouse* en este caso— no implica conceder al titular de dicho apartamento un derecho absoluto e irrestricto en perjuicio del bienestar y la seguridad de todos los condóminos. Impedir el acceso a la azotea a discreción del titular de dicho apartamento es contrario a la seguridad de los ocupantes del condominio en caso de un incendio, y el llamado derecho exclusivo de uso tiene que ceder en este caso al interés general de los condóminos y a la seguridad de todos. Igual solución se impone respecto a cualquier obstrucción a los medios o vías de acceso como son los pasillos, las escaleras y los ascensores.

■ No es necesario el concurso de la junta de directores o el de todos o una mayoría de los condóminos para promover acción judicial para la remoción de un obstáculo. Cualquier condómino puede ejercitar la acción por tratarse de una cuestión de seguridad pública que le afecta directamente.(5) Y para que proceda el *injunction*

---

(5) El profesor Hernán Racciatti, en su obra *Propiedad por pisos o departamentos*, 3ra edición, Buenos Aires, 1975, en la página 397, citando a Bendersky, *La propiedad horizontal*, dice:

"En este mismo sentido se ha señalado que la existencia de un agrupamiento organizado, como lo es el consorcio de propietarios, no es óbice alguno para que sus miembros puedan actuar individualmente para la defensa de sus facultades,

tampoco es necesario probar que se han causado daños, o que han de causarse daños en determinado momento. Nuestras decisiones en *Martínez et al.* v. *Soto,* supra, y *Jordán* v. *Rodríguez,* supra, citadas por el tribunal de instancia, no tienen ese alcance. Basta probar que determinada obstrucción sería contraria a la seguridad pública en caso de acontecimientos previsibles. Véase *Ortega Cabrera* v. *Tribunal Superior,* 101 D.P.R. 612, 616–617 (1973), y casos allí citados. Los incendios en los edificios no son acontecimientos de infrecuente ocurrencia.

El recurrente propone dos posibles soluciones al problema en este caso: (1) remoción de los portones y puerta que impiden el acceso a la azotea, o (2) que se le entreguen llaves de éstos. Consideramos que la primera solución, si bien despejaría de dichos obstáculos la vía de escape por la azotea en caso de un incendio, mantendría abierto para los niños el acceso a la azotea, con el consiguiente peligro para su seguridad. La segunda solución, es decir, que se provea al recurrente de llaves de dichos portones y puerta solucionaría el problema para éste en caso de un siniestro, pero no lo solucionaría para otras personas para quienes las llaves no estuvieren disponibles. Es de tenerse en cuenta, además, el derecho de uso exclusivo de la azotea de que disfruta el titular del *penthouse.*

Una tercera solución podría ser mantener los portones, pero sin cerraduras que necesiten llaves, de manera que cualquier persona pueda abrirlos fácilmente y tener acceso a la azotea en casos de emergencia. Esta solución, por supuesto, tendría que conformarse a las reglamentaciones de seguridad del Servicio de Bomberos o de cualquier otra agencia gubernamental.

No estamos en condiciones de señalar una de éstas, o cualquier otra solución, como la adecuada. Su determina-

---

por cuanto tanto cuando se atenta contra sus derechos privativos, como cuando se desconocen las *prerrogativas* que se añaden a ellas, el propietario afectado tiene al mismo tiempo que un *interés directo y personal,* la calidad requerida para acceder al órgano jurisdiccional a fin de obtener el respeto de sus derechos."

ción necesita prueba, y posiblemente una inspección ocular sería deseable. El tribunal de instancia está en mejor posición que este Tribunal para hacer una decisión al respecto. Consideramos que la armonía comunitaria entre los condóminos, a la cual debe apelarse, puede ayudar a encontrar la más adecuada solución.

En mérito de lo expuesto, *se expedirá el auto y se dictará sentencia por virtud de la cual se revoque la aquí recurrida, se declare con lugar la demanda de injunction, y se devuelva el caso al tribunal de instancia para ulteriores procedimientos compatibles con lo expresado en esta opinión.*