EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Denjiro Rivera Rodríguez<br><br>     Querellante-recurrida<br><br>        vs.<br><br> Junta de Directores Condominio<br> Torre de Caparra<br><br>     Querellada-recurrida<br><br>Departamento de Asuntos del<br>Consumidor<br><br>     Peticionario | Certiorari<br><br>2008 TSPR 55<br><br>173 DPR \_\_\_\_ |

Número del Caso: CC-2003-365
          Ref. CC-2003-370

Fecha: 2 de abril de 2008

Tribunal de Apelaciones:

        Región Judicial de Bayamón, Panel II

Juez Ponente:

        Hon. Néstor S. Aponte Hernández

Abogado de la Parte Peticionaria:

        Lcdo. José A. Maisonet Trinidad

Abogado de la Parte Recurrida:

        Lcdo. Eduardo Colón Castro


Materia: Revisión Administrativa


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Denjiro Rivera Rodríguez<br>Querellante-recurrida<br><br>v.<br><br>Junta de Directores Condominio Torre de Caparra<br>Querellada-recurrida<br><br>Departamento de Asuntos del Consumidor<br>Peticionario | CC-2003-365<br>ref.<br>CC-2003-370 | *Certiorari* |

Opinión del Tribunal emitida por la Jueza Asociada señora Fiol Matta

En San Juan, Puerto Rico, a 2 de abril de 2008.

La Junta de Directores del Condominio Torre de Caparra solicita la revocación del dictamen del Tribunal de Apelaciones que determinó que es nulo un contrato suscrito entre el Consejo de Titulares de un condominio residencial sometido al régimen de propiedad horizontal y una compañía privada de celulares que arrendó un espacio de la azotea del edificio para la instalación de antenas y otros equipos para transmitir su señal. Debemos resolver si una mayoría de los titulares puede arrendar un elemento común de un condominio residencial a un tercero ajeno al régimen o si se requiere para ello un voto de unanimidad.

I

La Junta de Directores del Condominio Torre de Caparra (en adelante, la Junta de Directores) convocó una asamblea extraordinaria el 20 de febrero de 2001 para la "aprobación de propuesta de arrendamiento de SunCom para instalación de antenas en el área del techo de los ascensores". En dicha convocatoria se indicó, conforme al artículo 38-C de la Ley de la propiedad horizontal, que si en la primera reunión no se constituía el quórum para celebrar la asamblea, se celebraría otra asamblea al día siguiente, a la misma hora, en la que los presentes constituirían el quórum. La asamblea se celebró el 7 de marzo del mismo año, pero la asistencia no fue suficiente para establecer el quórum. Al día siguiente, se celebró otra asamblea y se llevó a votación la propuesta de la compañía SunCom para arrendar un espacio en la azotea para ubicar allí tres antenas de teléfonos celulares y equipo accesorio. La propuesta se aprobó por unanimidad de los presentes. Luego de la votación, el recurrido, señor Denjiro Rivera Rodríguez, titular de un apartamento en el Condominio Torre de Caparra, se presentó a la asamblea y le entregó una carta al administrador para que se leyera en voz alta, en la cual daba sus razones, para oponerse a la aprobación de la propuesta.

El 28 de marzo de 2001, el señor Rivera Rodríguez, presentó una comunicación dirigida a la Junta de Directores en la cual plasmó formalmente su oposición a la

propuesta de SunCom. Posteriormente, sometió una querella en el Departamento de Asuntos del Consumidor (en adelante DACO) alegando que no se había presentado un contrato específico para la consideración de los titulares ni un plan para la disposición de los fondos. Asimismo, el 20 de abril de 2001 solicitó una orden de cese y desista para suspender los trabajos de instalación de equipos hasta que se aprobara el contrato conforme a derecho.

El 30 de noviembre de 2001, DACO desestimó la querella y resolvió que la Junta de Directores actuó conforme a su reglamento. En primer lugar, determinó que la convocatoria cumplió con lo requerido, ya que la segunda asamblea no se celebró antes que transcurrieran veinticuatro horas desde la primera, y porque el artículo 38-C de la Ley de la propiedad horizontal específicamente permite establecer el quórum con los presentes en dicha segunda asamblea. En segundo lugar, resolvió que el acuerdo con SunCom es válido, puesto que el reglamento del condominio delega lo referente a este tipo de asunto al Consejo de Titulares. En tercer lugar, DACO determinó que la aprobación del contrato propuesto por una mayoría es suficiente, ya que el contrato de arrendamiento es un acto de administración siempre que su vigencia sea de menos de seis años.

El señor Rivera Rodríguez solicitó la reconsideración del dictamen y al ser ésta declarada sin lugar, recurrió el 4 de febrero de 2002 al Tribunal de Apelaciones. El

foro apelativo revocó la resolución del DACO el 31 de marzo de 2003 y determinó que aunque la asamblea se constituyó válidamente, el contrato de arrendamiento es nulo porque tal acuerdo no era un mero acto de administración pues variaba el uso y destino de un elemento común del condominio y por lo tanto requería el consentimiento unánime de todos los titulares.

Posteriormente, se presentaron ante este Tribunal dos recursos de certiorari. En uno recurre DACO y en el otro la Junta de Directores del Condominio Torre de Caparra. Ambos alegaron que el arrendamiento de una parte de la azotea no altera el uso y destino del elemento común. El 26 de agosto de 2003 expedimos ambos recursos y pasamos a resolverlos conjuntamente.

II

La Ley de la propiedad horizontal, Ley Núm. 104 del 23 de junio de 1958, según enmendada, 31 L.P.R.A. sec. 1291 *et seq.*, se creó con el propósito de establecer un régimen legal que facilite la vida en convivencia para aprovechar mejor la escasez del terreno edificable en Puerto Rico. Serrano v. Sociedad Española de Auxilio Mutuo, 2007 T.S.P.R. 132; Maldonado v. Consejo de Titulares, 111 D.P.R. 427, 429 (1981); Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225, 242 (1978). *Véase además*, la Exposición de Motivos de la Ley Núm. 157 del 4 de junio de 1976.

Aunque la propiedad horizontal utiliza un espacio común para el aprovechamiento de varios titulares, no se trata de la figura clásica de la copropiedad del Código civil. Nuestra doctrina de la horizontalidad, establecida en la ley y aclarada a través de la jurisprudencia, procura no circunscribir la naturaleza jurídica del régimen utilizando conceptos del Código civil que no responden a la realidad económica y social de nuestra sociedad. En Arce v. Caribbean Home, supra, pág. 236, definimos la horizontalidad recogiendo la descripción del jurista Agustín Aguirre:

> El nuevo Derecho contempla la horizontalidad como una institución jurídica de caracteres propios, en que la propiedad singular y exclusiva de los pisos o apartamientos concurre, en inseparable unidad, con el condominio sobre los elementos comunes al servicio de aquellos…

En este régimen propietario, el bien común sirve para el disfrute adecuado de lo privado. Por esa razón y hacia ese fin existen los elementos comunes en el condominio y éstos se mantienen necesariamente en indivisión forzosa.

El artículo 11 de la Ley de la propiedad horizontal enumera de forma ilustrativa aquellas áreas del inmueble que se presumen elementos comunes del condominio y entre ellos menciona la azotea.[1] 31 L.P.R.A. sec. 1291-i. Sobre el uso de estas áreas, el artículo 14 dispone que "[c]ada titular podrá usar de los elementos comunes conforme a su

---

[1] A diferencia del techo que sólo cubre el edificio, la azotea es "la cubierta llana de un edificio dispuesta para poder andar por ella..." Consejo de Titulares v. Vargas, 101 D.P.R. 579, 583 (1973).

destino, sin impedir o estorbar el legítimo derecho de los demás." 31 L.P.R.A. sec. 1291-l. Los elementos comunes existen para satisfacer las necesidades de la convivencia, por lo que el uso de éstos se tiene que aceptar como un derecho de todos. Además, cada titular de un apartamento sometido al régimen de propiedad horizontal es también dueño en condominio de los elementos comunes y disfruta del mismo derecho al uso que los demás condóminos, independientemente de su porciento de participación. *Véase*, Hernán Racciatti, Propiedad por pisos o por departamentos, 3ra ed., Ediciones Depalma, Buenos Aires, 1975, pág. 249.[2]

El ejercicio del derecho en relación a los elementos comunes no es absoluto, ya que hay dos condiciones principales que limitan su uso.[3] Primero, no se puede menoscabar el derecho de los demás titulares sobre estos elementos. Este es un principio general de la convivencia y de la necesidad de proteger el disfrute de la propiedad que es esencial a la horizontalidad, y que nuestra Ley de la propiedad horizontal recoge en su artículo 14, *supra*.

El fin para el cual se ha destinado una cosa es otro límite al uso de los elementos comunes que todos los titulares deben respetar. El tratadista argentino Andrés

---

[2] El artículo 3 de la ley argentina de propiedad horizontal tiene una redacción semejante a la nuestra: "Cada propietario podrá usar de los bienes comunes conforme a su destino, sin perjudicar o restringir el legítimo derecho de los demás." Ley N° 13.512 B.O. 18/10/1948.

Rafael Palmiero reconoce que la definición del destino de una cosa en el régimen de la propiedad horizontal tiene un significado particular:

> En la propiedad horizontal se entiende por destino de las cosas, la realización, en los hechos, de las finalidades para las cuales se han sido construídas [sic], o en su caso, a las cuales han sido afectadas.

Tratado de la propiedad horizontal, Ediciones Depalma, Buenos Aires, 1974, pág. 259.  Una cosa puede tener un destino natural u objetivo que surge de la forma de la construcción y es la única razón por la cual ha sido creada.[4]  Por otro lado, las cosas también pueden tener un destino subjetivo. Esto es lo que Racciatti, *op. cit.*, 252, ha catalogado como "aquel [sic] que las partes convencionalmente han otorgado al bien de que se trate."

Cuando las áreas comunes sean aptas para sostener varios usos, la escritura matriz puede servir para precisar el uso a que serán destinadas. Art. 2 de la Ley, 31 L.P.R.A. sec. 1291. *Véase*, Soto Vázquez v. Vázquez Torres, 138 D.P.R. 282, 291-292 (1995).[5]  El destino de las

---

[3] Sobre este tema, *véase*, Jorge Laje, *op. cit.*, 205-207, que a su vez cita más legislación extranjera que dispone lo mismo.

[4] *Véase*, Jorge Laje, *op.cit.*, 206; Eduardo Vázquez Bote, Tratado teórico, práctico y crítico de Derecho privado puertorriqueño, Editorial Buttrerworth, New Hampshire, 1991, págs. 170-171; Racciatti, *op. cit.*, 252; Palmiero, *op. cit.*, 259.

[5] Decidimos en Soto v. Vázquez, *supra*, darle una mirada particular a las cláusulas de los documentos constitutivos que restringen el uso de las áreas del condominio en los condominios comerciales y profesionales, a base del propósito mercantil que motivó su constitución.

cosas y las demás limitaciones de uso de las áreas del condominio se plasman en los documentos constitutivos del régimen. Por lo tanto, es menester una lectura de la escritura matriz y del reglamento particular del condominio para determinar el uso al que se han destinado las áreas del condominio y si se contempla el uso de los elementos comunes por terceros extraños al régimen. La ley específicamente provee para que en la escritura matriz del condominio se precise el destino de toda área del inmueble, que sólo se puede variar mediante el consentimiento de todos los titulares. Art. 2 de la Ley, *supra*.

La unanimidad es un mecanismo para preservar los derechos fundamentales propios del dominio en un medio deliberativo en el que se aprueban asuntos que afectan adversamente el disfrute de la propiedad privada y en condominio. Asoc. de Condómines v. Ramírez Lizardi, 154 D.P.R. 699, 710 (2001). En cuanto a otros asuntos, que son más bien de conservación y administración de los elementos comunes, la ley solamente requiere la aprobación por una mayoría de los titulares. Por ejemplo, la ley faculta al Consejo de Titulares a "[e]ntender y decidir en los… asuntos de interés general para la comunidad, y acordar las medidas necesarias y convenientes para el mejor servicio común." Art. 38 de la Ley de la propiedad horizontal, 31 L.P.R.A. sec. 1293b(g). También, el artículo 16 dispone:

Las obras necesarias para la conservación del inmueble y para el uso eficaz de los elementos comunes serán acordadas por la mayoría de los titulares.

**Para toda obra que afecte los elementos comunes del inmueble [se] requerirá el consentimiento unánime de todos los titulares**. (Énfasis nuestro.) 31 L.P.R.A. sec. 1291n.[6]

El término afectar amerita aclaración. Una obra que afecte los elementos comunes necesariamente debe incidir sobre el derecho propietario de los condóminos para que la ley requiera la aprobación por unanimidad. Según el profesor Godreau:

Por *afectar* debe entenderse aquello que menoscaba, amenaza o disminuye la efectividad o el valor de un elemento común… [por ejemplo, las obras] que sin duda comprometen la eficacia, seguridad o solidez del edificio. Si una obra no afecta adversamente al condominio, entonces es una obra de **conservación** necesaria, de obras que redundan en un **uso más eficaz** de las áreas comunes—supuesto vislumbrado por el propio artículo—, o de una **mejora**. (Énfasis en el original.) Michel J. Godreau, El condominio, Editorial Dictum, 1992, pág. 128.

Cualquier acuerdo que afecte a los elementos comunes necesita la aprobación unánime del Consejo de Titulares, ya que a éste le pertenece el ejercicio de las facultades propias del dominio sobre las áreas comunes. Álvarez Figueredo v. González Lamela, 138 D.P.R. 958, 966 (1995).

---

[6] La Ley Núm. 153 del 11 de agosto de 1995 enmendó dicho artículo para eliminar el segundo párrafo del artículo y añadió una disposición particular sobre la aprobación de obras de mejoras en elementos comunes. Sin embargo, la Ley Núm. 43 de 21 de mayo de 1996 la derogó restableciendo así el requisito de la unanimidad para obras que "afecten" a los elementos comunes.

De esta forma se yuxtaponen los actos de conservación y los actos que afectan al elemento común, de manera análoga a los actos de administración y los actos de disposición en nuestro ordenamiento civil. Ahora bien, no es posible encontrar en nuestro Código civil definiciones categóricas de los actos de pleno dominio o de disposición. Tampoco hay consenso sobre ello en la doctrina, pues una marcada tendencia en los países civilistas niega que exista aisladamente un acto puro de administración ni de disposición.[7] Tomás Aguilera de la Sierra, Actos de administración, de disposición y de conservación, Editorial Montecorvo, Madrid, 1973.

No obstante, la Ley de la propiedad horizontal arroja luz sobre la facultad dispositiva de los titulares sobre los elementos comunes. Primeramente, es claro que el

---

[7] Sobre el acto de administración, el doctor De la Sierra concluye que:

> El acto de administración es el acto dirigido a obtener de un bien o patrimonio los rendimientos de que es susceptible. Esto es el concepto general, referido al acto de administración en sentido puro, al margen de toda institución jurídica… Cuestión completamente distinta es la referente a la persona del administrador… El administrador puede realizar actos de administración, negocios obligatorios y de disposición. Para juzgar de su aptitud, deberá considerarse la naturaleza del acto; las cualidades personales, en sentido jurídico, del administrador (titularidad, capacidad, legitimación); finalmente, entran en juego las reglas particulares de la institución, con arreglo a sus especiales características. (Énfasis nuestro.) De la Sierra, op. cit., 108-109.

titular carece de todo poder para disponer de los elementos comunes aisladamente, para ellos debe concurrir con todos los demás titulares. <u>Álvarez v. González</u>, supra. En segundo lugar, la ley impone el requisito de la unanimidad en ciertos asuntos porque alteran la forma o el destino de los elementos comunes.[8] Los actos de pleno dominio en la horizontalidad son, pues, aquéllos que alteran la fachada del edificio, modifican el uso y destino de los bienes comunes del condominio, o de alguna forma inciden sobre las facultades dominicales de los titulares condóminos. Vázquez Bote, *op. cit.*, 173. Por el contrario, resulta cónsono con el artículo 16 de la ley, *supra*, que distingue entre los actos que permiten la aprobación por una mayoría y los que requieren unanimidad, el concluir que "aquellos acuerdos que no impliquen modificaciones al carácter material o registral del condominio, salvo clara expresión legislativa, no requerirán acuerdo unánime". Opinión concurrente del Juez Asociado señor Hernández Denton en <u>Brown III v. J. D. Cond. Playa Grande</u> 154 D.P.R. 225, 243 (2001).

---

[8] *Véase*, el artículo 9 sobre la hipotecabilidad de los elementos comunes, 31 L.P.R.A. sec. 1291g; el artículo 13 sobre la indivisión de los elementos comunes, 31 L.P.R.A. sec. 1291k; el artículo 16 sobre las obras que "afecten" los elementos comunes, *supra*,; artículo 18 sobre la facultad de realizar obras o construcciones que comprometa la solidez del edificio, 31 L.P.R.A. sec. 1291p; el artículo 32 sobre la segregación de los elementos comunes. 31 L.P.R.A. sec. 1292j. *Véase además*, Vázquez Bote, *op. cit.*, 173.

El artículo 16 de la Ley, *supra*, también hace referencia a la facultad de aprobar obras con relación al "uso más eficaz" de los elementos comunes. Es necesario aclarar, sin embargo, que esta frase no tiene el propósito de facilitar la aprobación de medidas que de otra forma requerirán el consentimiento de todos los titulares. Por otra parte, en los condominios residenciales, el uso más eficaz no puede ser sinónimo de mayor productividad. A estos efectos, el profesor Godreau dice:

> …la institución del Régimen, cuando de edificios dedicados a la vivienda se trata, busca primordialmente resolver el problema de la escasez de espacio para construir las mismas. El interés a protegerse no puede ser, por lo tanto, una mayor "productividad" del inmueble— meta de la mejora--, sino, como bien expresa la Ley, **su uso más eficaz.** (Énfasis en el original.) Godreau, *op. cit.*, 123.

Acorde a lo anterior, el dominio que posee el titular individual sobre el uso y disfrute de los elementos comunes encuentra su límite en las restricciones que surjan de la ley, la escritura matriz y la necesidad de coordinar la vida en comunidad. Art. 15 de la Ley de la propiedad horizontal, 31 L.P.R.A. sec. 1292m. Por tanto, no sería lícito explotar un área para uso comercial si trastoca el uso destinado del área según los distintos documentos constitutivos del régimen.

Nunca hemos resuelto si un acuerdo que le cede derechos a un tercero sobre algún elemento común de un condominio de viviendas altera su uso y destino de manera que requiera la aprobación unánime de todos los titulares.

La Ley de la propiedad horizontal es muda en cuanto a este
particular. Los derechos sobre los elementos comunes
solamente se definen con relación a los condóminos, pues
son ellos los titulares de dichas áreas comunes, pero la
ley no vislumbra la cesión del uso a una persona ajena al
régimen que ningún derecho tiene en cuanto al disfrute de
los apartamentos. Ante este silencio, las cláusulas
particulares de la escritura matriz y del reglamento sobre
las restricciones al uso y el destino particular del área
cobran mayor importancia. Art. 2 de la Ley de la propiedad
horizontal, *supra*; Soto v. Vázquez, supra.

                                III

    Al recurrir al derecho comparado en la búsqueda de
principios y criterios que nos ayuden a resolver la
controversia presente encontramos que el enfoque adoptado
en otras jurisdicciones en cuanto a los elementos comunes
y el derecho de los titulares a disponer de dichas áreas
no necesariamente corresponde a nuestra filosofía de la
horizontalidad. Igualmente, distintos tratadistas
consideran la naturaleza jurídica de la propiedad
horizontal como un derivado de las figuras de la
copropiedad y el derecho de superficie[9] y no la consideran
una institución *sui generis* según contemplan tanto nuestra
ley como la ley cubana de la cual provienen muchos de
nuestros principios de la horizontalidad. Arce v.
Caribbean Home, *supra*.

---
[9] *Véase*, Gómez Gil, *op. cit.*, 49, 54.

Contrario a nuestra ley, que enumera varias instancias en las que se impone la unanimidad como requisito para la validez de ciertos actos en el condominio, la Ley de propiedad horizontal española, en su artículo 16, establece que la unanimidad se requerirá solamente para aprobar o modificar reglas en el título constitutivo o en los estatutos del condominio.[10] Al amparo de esta disposición, en derecho español se ha preferido brindar mayor protección al derecho de la mayoría, sobre los derechos propietarios de los titulares en condominio. La razón, según expresan Manuel Pons González y Miguel Ángel del Arco Torres en referencia a los comentarios del profesor Martín Orantes, es que *"la exigencia de consentimiento pleno, pone al total de la comunidad a los pies de cualquiera de los comuneros*, produciéndose muchas veces situaciones lamentables de falta de agilidad y armonía en la solución de los problemas comunitarios, ante la imposibilidad de conseguir la ansiada unanimidad."
(Énfasis en el original.) <u>Régimen jurídico de la propiedad</u>

---

[10] "Los acuerdos de la junta de propietarios se sujetarán a las siguientes normas: Primera.—La unanimidad para la validez de los que impliquen aprobación o modificación de reglas contenidas en el título constitutivo de la propiedad o en los estatutos… Segunda.—Para la validez de los demás acuerdos bastará el voto de la mayoría del total de los propietarios que, a su vez, representen la mayoría de las cuotas de participación…" Ley 49/1960, de 21 de julio, sobre Propiedad Horizontal. Como la privatización o desafectación de los elementos comunes afecta el título constitutivo, e igualmente la imposición de cargas sobre dichas áreas y la alteración del destino de la cosa, estos actos requieren la unanimidad bajo la ley española. *Véase*, S. 22 oct. 1993, TS; S. 30 jun. 1986, TS; S. 2 dic. 1983, AT Pamplona.

horizontal, 6ta ed., Editorial Comares, Granada, 1995, pág. 564. Véase además, Antonio Ventura-Traveset y González, Derecho de propiedad horizontal, 4ta ed., Editorial Bosch, Barcelona, 1980, pág. 218-221, 356-359. En cuanto a esto, la Audiencia Provincial de Madrid, en la sentencia del 27 de diciembre de 1991, Sec. 10.ª, AP Madrid, ha dicho que:

> Hay que entender, por tanto, que no todo acuerdo que afecte a cualquier regla de las del título constitutivo o de los estatutos—sea cual fuese la importancia real y social de la misma—exige la unanimidad sino sólo aquellos acuerdos que afecten en modo esencial a las reglas verdaderamente constitutivos o, si se quiere, de carácter materialmente "constitucional" para la comunidad de que se trate. Sólo desde esta perspectiva cabe armonizar los derechos de la mayoría, democráticamente constituida, con los de la minoría que, en todo caso, siempre pueden ser tutelados por la autoridad judicial.[11]

De forma consistente con este enfoque, el tratadista italiano Lino Salis y Juan Fuentes Lojo, en sus anotaciones de Derecho español a la obra del primero, opinan que ceder a un tercero el derecho a usar los

---

[11] Asimismo, la Audiencia Provincial de Murcia, estableció que el consorcio de propietarios:
> [C]omo órgano de expresión de una voluntad conjunta… debe prevalecer frente a los propietarios individuales, evitando que la extensión desmedida a los supuestos que reclaman unanimidad de los partícipes supla en la práctica la voluntad de la mayoría de los interesados para el mejor disfrute del inmueble, reservándola de la exigencia de unanimidad a los casos estrictamente comprendidos en la regla 1.ª del art. 16 de la Ley de Propiedad Horizontal. (Sentencia del 29 de enero de 1991, Sec. 3.ª, AP Murcia.)

elementos comunes es válido si concurre una mayoría de los titulares. Lino Salis, El condominio en los edificios, Editorial Bosch, Barcelona, 1968, pág. 86-87. Hernán Racciatti coincide con este criterio. Racciatti, *op. cit.*, 264-266. Entienden estos tratadistas que si la facultad de disfrutar de los elementos comunes se puede ejercer de forma autónoma y desvinculada del goce del apartamento privado, entonces la mayoría de los titulares podría ceder su uso a un tercero, siempre y cuando al así hacerlo no se menoscabe el uso y disfrute de los demás titulares y que con ello no se infrinjan las disposiciones de la escritura matriz o del reglamento del condominio. Sin embargo, al aplicar este criterio estos tratadistas no distinguen entre condominios destinados a uso residencial y los destinados a uso comercial. Tampoco se refieren a la posibilidad de destinar el elemento común por voto meramente mayoritario a un uso completamente distinto del edificio en su totalidad, como sucede al destinar un bien común en un condominio residencial a un uso comercial.

Por su parte, la ley italiana de 1934, posteriormente recogida en el Codice Civile de 1942, no hace referencia alguna al requisito de unanimidad y prohíbe algunos actos que nuestro ordenamiento permitiría mediante el consenso unánime.[12] El Codice Civile, en sus secciones respecto al

---

[12] La ley argentina de propiedad horizontal, que influyó en la redacción de la ley cubana, a su vez fue influenciada por la ley italiana de 1934. Así opinó Orlando Gómez Gil en su obra La propiedad horizontal en Cuba: "En nuestra opinión, la Ley argentina es una de las mejores que

condominio en los edificios, específicamente veda la ejecución de obras que alteren la fachada arquitectónica o la seguridad del edificio, aunque medie la aprobación de todos los titulares con todas las participaciones en el condominio.[13] Gino Terzago, Il condominio, Editorial Giuffrè, Varese, 1981, págs. 130 – 135; Giuseppe Branca, Commentario del Codice Civile, Libro Terzo – Della Proprietà, 6ta ed., Editorial Nicola Zanichelli, Bologna, 1982, págs. 423- 426, 437; Salis, op. cit., 91-95. Sin embargo, se ha interpretado que no se prohíbe toda alteración de este tipo, sino aquélla que constituya "una modificación material de la cosa que suponga alteraciones en la entidad sustancial o cambio en el destino propio de la cosa". Cass., 25 julio 1953, núm. 2.531; Traducción en Salis, op. cit., 92 n.3. (Énfasis nuestro.) Se trata, pues, de un régimen que prohíbe absolutamente ciertos

---

existen, no sólo por su cohesión y claridad, sino por la forma que amplia como regula la institución sin apartarse un momento de su verdadero espíritu." Orlando Gómez Gil, La propiedad horizontal en Cuba, Editorial Lex, La Habana, 1954, pág. 33.

[13] El texto del artículo 1120 del Codice Civile dispone: "I condomini, con la maggioranza indicata dal quinto comma dell'articolo 1136, possono disporre tutte le innovazioni dirette al miglioramento o all'uso più comodo o al maggior rendimento delle cose comuni.
Sono vietate le innovazioni che possano recare pregiudizio alla stabilità o alla sicurezza del fabbricato, che ne alterino il decoro architettonico o che rendano talune parti comuni dell'edificio inservibili all'uso o al godimento anche di un solo condomino."

actos o "innovaciones" y refiere todo lo demás a decisión mayoritaria.

En Puerto Rico, el requisito de la unanimidad se utiliza para preservar la esencia de la propiedad y proteger al consumidor, dueño de su apartamento y de los elementos comunes, de los actos que puedan llevar a cabo los órganos administrativos y ejecutivos que choquen o de alguna manera incidan sobre las facultades dominicales de los titulares. Nuestra doctrina de la horizontalidad establece que los elementos comunes son para el disfrute de los titulares, aunque se clasifiquen como necesarios o voluntarios, generales o limitados. *Véase*, Arce v. Caribbean Home, supra, pág. 235-236; Vázquez Bote, *op. cit.*, 169. El artículo 13 de la Ley dispone que "los elementos comunes, generales y limitados, se mantendrán en indivisión forzosa y no podrán ser objeto de la acción de división de la comunidad…" 31 L.P.R.A. 1291k. Por eso hemos dicho que la horizontalidad no tolera que se separe el uso y aprovechamiento de los elementos comunes del disfrute exclusivo del apartamento, toda vez que uno sirve para el disfrute del otro. Asociación de Condóminos v. Centro I, Inc., 106 D.P.R. 185, 194 (1977). Sin embargo, este principio de la indivisión forzosa no incide sobre la facultad del Consejo de Titulares de ceder el uso de aquellos elementos comunes que no sean imprescindibles para el disfrute por todos los titulares de sus derechos y permitir de esa forma que dichos elementos se dediquen al

disfrute exclusivo y privado de uno o varios <u>apartamentos</u>. Ahora bien, lo podrá hacer solamente mediando el consentimiento unánime de todos los titulares. Art. 12 de la Ley, 31 L.P.R.A. sec. 1291j.[14] En fin, la Ley de la propiedad horizontal específicamente crea los elementos comunes para servir a los condóminos. El Consejo de Titulares, como entidad creada por ley para ejercer las facultades del dominio sobre los elementos comunes, puede exceptuar ciertos elementos de ser usados por todos los titulares, pero el ordenamiento requiere para ello la unanimidad. <u>Álvarez v. González</u>, supra. Acorde a este esquema regulatorio y a la política a la que responde, trastornaría la naturaleza del régimen el ceder a terceros el uso de los elementos comunes sin la anuencia unánime de los titulares.

IV

En el caso ante nuestra consideración, el Consejo de Titulares suscribió un contrato de arrendamiento con una compañía privada de celulares arrendándole una parte de la azotea del edificio. La Junta de Directores sostiene que tal contrato de arrendamiento es un mero acto de administración y fundamenta la validez del acuerdo en unas

---

[14] La jurisprudencia en numerosas ocasiones ha abundado en el tema de la privatización de los elementos comunes cuando éstos no sean indispensables para el disfrute exclusivo del apartamento. *Véase*, <u>De la Cruz v. Toro Sintes</u>, 112 D.P.R. 650; <u>Costa Linda v. Registrador</u>, 109 D.P.R. 861 (1980); <u>Arce v. Caribbean Home</u>, supra; <u>Consejo de Titulares v. Vargas</u>, supra; <u>Castle Enterprises v. Registrdor</u>, 87 D.P.R. 775 (1963).

disposiciones del reglamento del condominio. Particularmente, el artículo 34 del reglamento que establece:

> El Consejo de Titulares acordará, lo antes posible, todo lo relacionado con la colocación de <u>antenas de radio</u> y <u>televisores</u>, <u>teléfonos</u>, <u>aire acondicionado</u>, ventiladores y otros aparatos por el estilo y de los objetos a que se refiere el artículo anterior. (Énfasis nuestro.)

El artículo 33 del reglamento, por su parte, plasma los deberes de los condóminos y los límites a los derechos sobre sus áreas privativas y comunes.[15] En lo pertinente, este artículo establece el deber de cada condómino de:

> Hacer ejecutar por su propia cuenta, todas las reparaciones necesarias en las instalaciones internas de… <u>teléfono</u> y <u>aire acondicionado</u>, hasta las líneas maestras, así como… instalaciones sanitarias y de aire acondicionado, puestas [sic], ventanas, lámparas y <u>todos los demás accesorios pertenecientes a su apartamento</u>. (Énfasis nuestro.)

Éstos son los objetos que señala el artículo 34 cuando describe "otros aparatos por el estilo".

Estas disposiciones reglamentarias configuran la facultad sobre los bienes comunes que proveen los artículos 16 y 38 de la Ley de la propiedad horizontal, *supra*, para el uso más eficaz y el mejor servicio común.

---

[15] El artículo prohíbe colocar objetos de propaganda o avisos en las paredes exteriores y en toda área común, tender ropa en las ventanas, sacudir alfombras en las barandas, echar basura fuera de los lugares propios para ello, permitir que las mascotas permanezcan en las áreas comunes, usar las áreas comunes como lugares para el depósito de objetos o de reuniones de manera que entorpezcan el tránsito o hacer modificaciones en las dependencia o instalaciones de los apartamentos.

Su lectura conjunta nos lleva a concluir que el artículo 34 del reglamento del condominio faculta al Consejo de Titulares para acordar la ubicación de estos teléfonos, acondicionadores de aire y antenas de aparatos pertenecientes a titulares individuales en áreas comunes del condominio porque son "accesorios… a su apartamento". De esta forma el artículo 34 del reglamento sirve para fomentar la armonía en el condominio y asegura a cada titular el derecho al uso y disfrute de su propiedad privada y los elementos comunes. Una lectura integral de ambas disposiciones reglamentarias revela la intención de acomodar el mejor uso de los elementos comunes para los titulares, sin menoscabar el derecho de los demás condóminos. Nada de lo dispuesto en estos artículos sugiere el poder de ceder el uso de los elementos comunes a personas ajenas al condominio. Tomando en cuenta que no se puede derivar válidamente de un reglamento más facultades que las dispuestas en la ley que le da vida, no podemos interpretar las disposiciones del reglamento citadas para permitir el arrendamiento de la azotea para fines comerciales por el voto de una mayoría cuando la Ley de la propiedad horizontal impone el requisito de la unanimidad para alterar el uso y destino de los elementos del condominio y afectar el uso de éstos por los demás titulares. Art. 16 de la Ley, *supra*.

Tampoco podemos perder de vista que la controversia que debemos resolver ocurre en el contexto de un

condominio de fines residenciales. En otras ocasiones hemos interpretado la Ley de la propiedad horizontal para proteger los intereses particulares de los condóminos según la naturaleza del condominio. *Véase*, Soto v. Vázquez, supra, pág. 292. La productividad que persiguen los titulares de condominios de vivienda no se manifiesta de la misma manera en los condominios destinados a oficinas profesionales o al comercio. Godreau, *op. cit.*, 123. Por esa razón, estamos ante una preocupación legítima que debemos juzgar en aras de proteger el derecho de los titulares sobre los bienes de su propiedad, sin menoscabar el disfrute del ambiente residencial del condominio.

Los elementos comunes existen para el disfrute de los condóminos, de acuerdo al fin que persigue la horizontalidad. Arce v. Caribbean Home, supra; Vázquez Bote, *op. cit.*, 169. De igual forma los actos de administración y los actos que requieren unanimidad de los condóminos se definen de acuerdo a ese fin. Por eso no basta con señalar que el contrato de arrendamiento es un acto de administración en otros contextos jurídicos; en la propiedad horizontal operan otras consideraciones. *Véase*, De la Sierra, *op. cit.*, 108-109.

El arrendamiento de un elemento común en un condominio residencial para fines comerciales evidentemente altera el uso y destino de dicho elemento y requiere la unanimidad. La azotea, por su naturaleza, puede tener varios usos, pero al estar ubicada en un condominio destinado al uso

residencial, ese destino constituye una restricción que limita los varios usos que de otra manera podría sostener, a menos que los documentos constitutivos del régimen particular del condominio permitan usos no residenciales. Además, la cesión del uso de elementos comunes a terceros que ninguna relación tienen con el condominio afecta la configuración de los elementos comunes porque altera la naturaleza del régimen comunitario sin la aprobación de la todos los condóminos según requiere la ley.

Por los fundamentos antes expuestos, resolvemos que es nulo el contrato que ceda derechos sobre el uso de los elementos comunes a un tercero ajeno al régimen de propiedad horizontal sin el consentimiento unánime de los titulares. Resolvemos igualmente que el arrendamiento de un elemento común de un condominio residencial para fines comerciales constituye un acto que altera su uso y destino. Por consiguiente, el contrato de arrendamiento entre el Consejo de Titulares y SunCom es nulo toda vez que altera el uso y destino de la azotea y cede a terceros el uso de los elementos comunes en un condominio de vivienda, todo ello sin el consentimiento unánime de todos los titulares. Acorde a lo anterior, se dictará sentencia confirmando la sentencia del Tribunal de Apelaciones.

Se dictará sentencia de conformidad.


Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Denjiro Rivera Rodríguez<br>Querellante-recurrida<br><br>v.<br><br>Junta de Directores Condominio<br>Torre de Caparra<br>Querellada-recurrida<br><br><br>Departamento de Asuntos del<br>Consumidor<br>Peticionario | CC-2003-365<br>ref.<br>CC-2003-370 | *Certiorari* |

*SENTENCIA*

En San Juan, Puerto Rico, a 2 de abril de 2008.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, resolvemos que el contrato de arrendamiento entre el Consejo de Titulares y SunCom es nulo toda vez que altera el uso y destino de la azotea y cede a terceros el uso de los elementos comunes en un condominio de vivienda, todo ello sin el consentimiento unánime de todos los titulares. Acorde a lo anterior, se confirma la sentencia del Tribunal de Apelaciones.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Presidente señor Hernández Denton disiente con opinión a la cual se une la Jueza Asociada señora Rodríguez Rodríguez.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Denjiro Rivera Rodríguez

     Recurrido

       v.

Junta de Directores del         CC-2003-365   Certiorari
Condominio Torre de Caparra

                       Ref. CC-2003-370

       v.

Departamento de Asuntos
del Consumidor

     Peticionarios

Opinión Disidente emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON a la cual se une la Juez Asociada SEÑORA RODRÍGUEZ RODRÍGUEZ

San Juan, Puerto Rico, a 2 de abril de 2008.

Disentimos de la Opinión del Tribunal por entender que un contrato de arrendamiento para la instalación de antenas de celulares en el techo de la fosa de los ascensores por un término menor de seis (6) años es un acto de administración que sólo requiere la aprobación de una mayoría del Consejo de Titulares, pues constituye un uso más eficaz de este elemento común. Conforme al Artículo 16 de la Ley de Propiedad Horizontal, 31 L.P.R.A. sec. 1291k, y dado que el acuerdo tomado por el Consejo de Titulares del Condominio Torre de Caparra no afecta ni menoscaba el uso y destino de la azotea del mencionado condominio, no procede decretar la nulidad del contrato en controversia.

No cabe duda que una determinación que altere o afecte el uso y destino de los elementos comunes requiere el consentimiento unánime de todos los titulares. 31 LPRA 1291n. Lo que debemos ponderar es si, en efecto, un arrendamiento de una parte del techo de los ascensores afecta el uso y destino de ese elemento común. Al respecto, el profesor Godreau explica que "[p]or afectar debe entenderse aquello que menoscaba, amenaza o disminuye la efectividad o el valor de un elemento común". M. Godreau, El Condominio, 1992, pág. 128.

Del expediente de autos se desprende que el elemento común en controversia no es parte de la azotea, sino de un área pequeña elevada sobre la azotea del edificio ('elevator shaft') que no es frecuentada ni utilizada por los titulares del Condominio Torre de Caparra. Además, no hay acceso regular alguno a la misma. Contrario a lo que concluye la Opinión del Tribunal, somos del criterio que dicho elemento común no es parte de la azotea, sino el techo de la fosa de los ascensores. En vista de ello, resulta evidente que la instalación de la antena no impide ni afecta el uso y destino de la azotea del condominio ni de la fosa de los ascensores, por lo que nos parece irrazonable exigir el consentimiento unánime de los titulares para tales efectos.

Por otro lado, los actos de administración o conservación de los elementos comunes sólo requieren la aprobación de una mayoría de los titulares. Artículo 16 de la Ley de Propiedad Horizontal, *supra*. Hemos sostenido en

ocasiones anteriores que los acuerdos del Consejo de Titulares que no impliquen modificaciones al carácter material o registral del condominio, salvo clara expresión legislativa, no requerirán acuerdo unánime. Véase Opinión Concurrente, Brown III v. J.D. Cond. Playa Grande, 154 DPR 225, 243 (2001). Conforme a este criterio, el arrendamiento en controversia no implicaba modificaciones al carácter registral del condominio, pues se trataba de un arrendamiento por un término de menos de seis años que no tiene acceso al Registro de la Propiedad. De hecho, este tipo de arrendamiento es considerado por la teoría de contratos y de derecho hipotecario como un acto de administración.

A su vez, el techo de la fosa de los ascensores en el Condominio Torre de Caparra no es un área a la cual los titulares tenían un acceso regular para andar o disfrutar de la misma. De hecho, las fotografías incluidas en el expediente revelan que la configuración de este elemento común no permite que los titulares utilicen dicha área como terraza o como superficie por la cual se pueda caminar o disfrutar como si fuera otro piso o azotea. Además, dichas fotografías también demuestran que el único uso que actualmente se le brinda a este techo es para la instalación de antenas de diversos tipos.

Por consiguiente, concluimos que el uso de este elemento común para los propósitos del contrato de arrendamiento no interfiere de forma alguna con el uso y

destino que los titulares le brindan a la azotea o al techo de la fosa de los ascensores del Condominio Torre de Caparra. A base de estas circunstancias, no tenemos duda que el contrato de arrendamiento en controversia constituyó un acto de administración para darle un uso más eficaz a dicho elemento común. Por tanto, entendemos que el Departamento de Asuntos del Consumidor actuó correctamente al determinar que dicho acuerdo sólo requería la aprobación de la mayoría de los titulares.

De otra parte, aun si se requiriese -como concluye la Opinión del Tribunal- el consentimiento unánime de los titulares para acuerdos de esta naturaleza, somos del criterio que no procedería anular el contrato de arrendamiento en el caso de autos. Entendemos que las objeciones al contrato esbozadas por el Sr. Denjiro Rivera Rodríguez -el único titular que se opuso al acuerdo- son infundadas e improcedentes en derecho. Sus argumentos consistían, esencialmente, en que no concurrieron la mayoría de los titulares del condominio a la Asamblea Extraordinaria; que el acuerdo autorizaba la enajenación de un elemento común; y que no se había presentado un contrato específico ni un plan para la disposición de los fondos ante la consideración de los titulares. En su función revisora de las determinaciones del Consejo de Titulares del Condominio Torre de Caparra, el Departamento de Asuntos del Consumidor correctamente descartó de plano todas estas objeciones. Permitir que al amparo de estos fundamentos el

señor Rivera Rodríguez anule la efectividad del contrato en cuestión supondría reconocerle un poder de veto contrario a los principios de la buena fe y de la prohibición del abuso del derecho que siempre han regido en todo nuestro ordenamiento jurídico y que, por ende, aplican a la presente situación de hechos.

Por todo lo anterior, disentimos respetuosamente del curso de acción seguido por la mayoría.


Federico Hernández Denton
Juez Presidente