RAFAEL A. SOTO VÁZQUEZ y su esposa ROSA MILAGROS SOTO REINOSA DE SOTO, ETC., demandantes y recurridos, *v.* CARLOS VÁZQUEZ TORRES, su esposa MARÍA ISABEL RODRÍGUEZ y la SOCIEDAD LEGAL DE GANANCIALES, ETC., demandados y recurrentes.

*Número:* RE-91-472          *Resuelto:* 21 de abril de 1995

284

*Michael J. Godreau*, abogado de la parte recurrente; *Enrique Nassar Rizek*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Comparecen ante nos Carlos Vázquez Torres y su esposa María Isabel Rodríguez para que revoquemos la sen-

tencia del Tribunal Superior que sumariamente declaró que éstos estaban impedidos de establecer una tienda para el expendio de mercancía seca en un local de su propiedad en el Centro Comercial de Humacao, en vista de disposiciones restrictivas a dicho uso plasmadas en la escritura constitutiva del régimen de propiedad horizontal en dicho lugar.

La controversia que hoy nos ocupa permite que examinemos la aplicabilidad de la norma expuesta en *Cond. Prof. S.J. H. Centre v. P.R.F., Inc.*, 133 D.P.R. 488 (1993), a un condominio creado únicamente para usos comerciales. Al hacer extensiva dicha norma al caso de autos, y en vista de las consideraciones adicionales que conlleva el dedicar un inmueble —sujeto al régimen de la propiedad horizontal— a fines únicamente comerciales, resolvemos que el lenguaje utilizado en la escritura aquí en controversia y el correspondiente reglamento no son lo suficientemente "claros y precisos" para impedir que un titular de uno de los locales del Centro Comercial establezca una tienda para expendio de mercancía seca en su propiedad. Como consecuencia, revocamos.

I

En 1976 la Compañía de Desarrollo Comercial de Puerto Rico constituyó el régimen de propiedad horizontal en un inmueble de su propiedad localizado en Humacao, Puerto Rico, bajo el nombre de "Centro Comercial de Humacao" (en adelante el Centro). En la escritura de constitución del régimen y en su correspondiente reglamento se incluyeron varias cláusulas referentes a la utilización del Centro y de los locales que lo constituyen. Las pertinentes a esta controversia son la cláusula de la escritura referente a "DESTINO DEL EDIFICIO, ANEXOS Y TERRENOS", la descripción en la escritura del local diez A (10-A) y la sección 1103 del Reglamento.

En la primera de éstas se dispuso que:

... El Edificio y sus locales estarán destinados *única y exclusivamente* a oficinas y locales comerciales durante los primeros veinte (20) años, a partir del otorgamiento de esta escritura. (Énfasis suplido.) Apéndice 4 de la Solicitud de revisión, pág. 53.

Por su parte, la descripción del local diez A (10-A), en lo pertinente indica:

Está diseñado y constru[i]do para un supermercado. Apéndice 4 de la Solicitud de revisión, pág. 89.

En cuanto a la sección 1103 del Reglamento del Consejo de Condóminos, ésta dispuso:

Todas las alteraciones y modificaciones que se efectúen a los locales no podrán afectar el propósito para el cual fueron construidos, así como su uso y naturaleza. Queda por la presente prohibido por los próximos veinte (20) años o mientras dure el financiamiento del edificio, cual sea mayor, toda alteración y modificación que altere los propósitos para los cuales fue construido el Centro Comercial de Humacao. Apéndice 4 de la Solicitud de revisión, pág. 117.

Basado en estas disposiciones, Rafael A. Soto Vázquez y su esposa, María Isabel Rodríguez, presentaron una demanda ante el Tribunal Superior contra el Sr. Carlos Vázquez Torres, su esposa y la Asociación de Condóminos del Centro Comercial de Humacao, Inc. Alegaron, en síntesis, que Vázquez Torres, luego de adquirir el local 10-A del Centro, intentó variar el uso dispuesto en la escritura para dicho local sin obtener el voto unánime de los titulares del Centro, en abierta violación de la Ley de la Propiedad Horizontal. En la alternativa alegaron que el uso dispuesto en la escritura para dicho local constituía una servidumbre en equidad y que no se habían cumplido los requisitos jurisprudencialmente requeridos para variarla. Finalmente, arguyeron que según los términos del Reglamento del Con-

sejo de Condóminos (en adelante el Reglamento), se estableció claramente que no podrían variar los usos dispuestos para los locales del Centro por un período de veinte (20) años a partir de que se otorgara la escritura o mientras durara el financiamiento del edificio.

Por su parte, en la contestación Vázquez Torres alegó que la única restricción al uso existente en el Centro a tenor con la escritura matriz exigía que los locales se dedicasen a oficinas y locales comerciales y que la frase a la cual aludía el recurrido con respecto al local 10-A era meramente descriptiva. Además, argumentó que Soto estaba impedido de incoar la acción de epígrafe por sus actos propios, ya que como titular individual y presidente del Consejo de Titulares del Centro en el pasado había gestionado y aprobado cambios de uso para varios locales cuya descripción en la escritura era idéntica a la del local 10-A y los cuales se llevaron a cabo con el voto mayoritario de dicho Consejo de Titulares. Por último, argumentó Vázquez que el cambio por él propuesto había sido aprobado por los titulares presentes en la reunión del Consejo de Titulares de 9 de febrero de 1990 con tan sólo el voto del demandante Soto en contra.

Luego de varios trámites procesales y la presentación de sendas mociones para solicitar que se dictara sentencia sumaria, el tribunal de instancia emitió sentencia en la que determinó que el local 10-A del Centro no podía dedicarse a otro uso que no fuese el de supermercado, conforme a la escritura y el Reglamento, hasta tanto expirara el término de veinte (20) años provisto en su conclusión en el hecho de que las disposiciones de la escritura y del Reglamento conjuntamente establecían una restricción al uso de los apartamentos conforme a la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1291 *et seq.*. En consecuencia, declaró sin lugar las mociones de sentencia sumaria presentadas por los

demandados. Además, el tribunal concluyó que era inaplicable al caso la doctrina de los actos propios.

Inconformes con dicha determinación, recurrieron ante nos los esposos Vázquez-Rodríguez mediante recurso de revisión y solicitan que revoquemos la sentencia dictada por el Tribunal Superior.(¹) Aducen en su recurso que el demandante estaba impedido por sus propios actos de disputar el cambio de uso llevado a cabo por el demandado Vázquez. Igualmente, señalan 'que el lenguaje de la escritura matriz no era lo suficientemente claro y preciso para constituir una restricción al uso y que, dado que la verdadera limitación se encontraba en el Reglamento, tal restricción constituía una servidumbre en equidad.(²)

## II

En múltiples ocasiones hemos expresado que "[e]xiste una clara política pública en Puerto Rico dirigida a estimular la utilización de terrenos y construcción de multipisos que se rijan por el Régimen de la Propiedad Horizontal". *Maldonado v. Consejo de Titulares*, 111 D.P.R. 427, 429 (1981). Véase *Arce v. Caribbean Home Const. Corp.*, 108 D.P.R. 225, 242 (1978). Este régimen debe estar "sujeto a evolución y desarrollo para atender las necesidades sociales y económicas cambiantes de un país isleño con escasez de viviendas y terrenos, gran concentración poblacional, escasos recursos naturales y económicos, esparci-

---

(¹) La Asociación de Condóminos del Centro Comercial de Humacao, Inc. había presentado moción de sentencia sumaria ante el tribunal de instancia; sin embargo, por no haber presentado escrito alguno ante este Tribunal, la sentencia desestimatoria de la moción advino final y firme. Igualmente, los recurrentes habían presentado reconvención contra Soto; sin embargo, en su recurso no disputan su desestimación, por lo que advino también final y firme.

(²) No atendemos este argumento alternativo del recurrente debido a la determinación a la cual llegamos más adelante. Sin embargo, debe tomarse en cuenta que las servidumbres en equidad se tienen que constituir en escritura pública, no en documento anejo a ésta, y con el consentimiento unánime de todos los titulares del condominio. *Asoc. V. Villa Caparra v. Iglesia Católica*, 117 D.P.R. 346 (1986); *Lawton v. Rodríguez Rivera*, 35 D.P.R. 487, 494 (1926).

miento urbano y un costo creciente de la infraestructura". *Cond. Prof. S.J. H. Centre v. P.R.F., Inc.*, supra, pág. 490.

En vista de dichos propósitos y la importancia socio-económica del estatuto, su interpretación debe ser "constructiva e imaginativa". *Castle Enterprises, Inc. v. Registrador*, 87 D.P.R. 775, 781 (1963); *Cond. Prof. S.J. H. Centre v. P.R.F., Inc.*, supra. Tal interpretación debe ajustarse a la definición misma de la horizontalidad; la coexistencia de diversos pisos de dominio exclusivo con el condominio forzoso e inescapable de elementos comunes. *Consejo Tit. Cond. McKinley Court v. Rullán*, 126 D.P.R. 387, 393 (1990), citando a *Arce v. Caribbean Home Const. Corp.*, supra. Véase, además, M. Batlle Vázquez, *La propiedad de casas por pisos*, 3ra ed., España, Ed. Marfil, 1956, pág. 53.

De otra parte, aún cuando la ley dispone que los titulares tendrán dominio exclusivo de sus apartamentos, dicho derecho no cuenta con la misma extensión que el dominio concebido por nuestro Código Civil en otros contextos. En palabras del tratadista José A. Negrí:

> Si consideramos el dominio como "el derecho real en virtud del cual una cosa se encuentra sometida a la voluntad y a la acción de una persona", según lo define el art. 2506 del Código Civil, tendremos que en el régimen de la propiedad horizontal, ese derecho no existe con igual amplitud, ni tiene el mismo alcance que en el derecho común. J.A. Negrí, *Régimen argentino de la propiedad horizontal*, 2da ed., Buenos Aires, Ed. Depalma, S.A.C.I., 1953, pág. 53.

De esta manera, además de las restricciones tradicionales al dominio,[3] la Ley de la Propiedad Horizontal impone límites adicionales a la propiedad exclusiva de los apartamentos. Una de estas limitaciones adicionales consiste en que la Ley de la Propiedad Horizontal permite

---

[3] Entiéndase, entre otras, la legislación local de planificación, legislación federal de aeronáutica, la moral y las buenas costumbres. Véase E. Vázquez Bote, *Tratado teórico, práctico y crítico de Derecho Privado puertorriqueño*, New Hampshire, Equity Publishing Corp., 1991, Vol. VII, pág. 221.

restringir el uso o destino de los apartamentos particulares. A esos efectos, el Art. 2 de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1291, dispone:

> La escritura que establezca el régimen de propiedad horizontal expresará clara y precisamente el uso a que será destinada toda área comprendida en el inmueble, y una vez fijado dicho uso sólo podrá ser variado mediante el consentimiento unánime de los titulares. (Énfasis suplido.)

Igualmente, el Art. 15 de la misma legislación, en lo pertinente, dispone:

> Cada apartamiento se dedicará únicamente al uso dispuesto para el mismo en la escritura a que se refiere la sec. 1291 de este título. 31 L.P.R.A. sec. 1291m(a).

Esta fijación del uso o destino correspondiente constituye una limitación de facultades inherentes al uso y disfrute de cada apartamento que se le impone al titular individual en interés de la colectividad. E. Vázquez Bote, *Derecho Civil de Puerto Rico*, San Juan, Eds. Jurídicas, 1974, Vol. II, pág. 275.

La particularidad de esta limitación al dominio reside en su carácter contractual. Según expuesto por Racciatti:

> Las restricciones impuestas al absolutismo del derecho de propiedad tiene su fundamento, en materia de propiedad horizontal, no solamente en las obligaciones típicamente vecinales que referimos más adelante, sino también, y muy especialmente, en las contraídas por los partícipes del consorcio en el reglamento de copropiedad. H. Racciatti, *Propiedad por pisos o por departamentos*, 3ra ed., Ed. Depalma, 1975, pág. 410.

En *Cond. Prof. S.J. H. Centre v. P.R.F., Inc.*, supra, pág. 504, elaboramos sobre este tipo de restricción. Allí indicamos que:

> Basta con que se precisen e identifiquen claramente ciertas clases de usos en términos amplios y por definiciones de categorías como vivienda o uso comercial, *y que informen debidamente y sin ambigüedades* a los nuevos adquirentes y terceros, para que éstos sepan a qué atenerse con respecto a los usos

previstos para los diversos apartamientos susceptibles de aprovechamiento individual que conforman el inmueble. ... *El criterio más importante al determinar si la designación de un uso cumple con la ley es que informe debidamente y sin ambigüedades* a los nuevos adquirentes y terceros. (Énfasis en el original.)

Tal requisito se justifica ampliamente por el hecho de que la escritura constitutiva del régimen y el correspondiente reglamento son acuerdos que obligan a los nuevos adquirentes. *Consejo de Titulares v. Vargas*, 101 D.P.R. 579, 582–583 (1973); *Arce v. Caribbean Home Const. Corp.*, supra, pág. 245. Es decir, una vez el tercero adquiere el apartamento adviene titular y, como tal, está obligado al cumplimiento de lo dispuesto por la escritura, el Reglamento y la Ley de la Propiedad Horizontal. Así, estas limitaciones obedecen a la expectativa de los titulares de que los apartamentos no se utilicen para actividades que impidan el uso adecuado de los restantes apartamentos o locales. En esta medida es que la fijación de un uso o destino para los apartamentos en la escritura provee un aviso adecuado a los terceros interesados sobre la conducta y actividades que pueden esperar de sus cotitulares.

▪ Por su efecto sobre el derecho propietario de los titulares, y aun cuando no catalogamos las restricciones al uso a la luz de la Ley de la Propiedad Horizontal, como servidumbres en equidad,[4] éstas son verdaderas "limitaciones a que está sometido este dominio singular del propietario". O. Gil, *La Propiedad Horizontal en Cuba* 74 (1954). Éstas deben ser interpretadas de forma estricta y restrictiva, pues es principio básico de nuestro ordenamiento que la propiedad se presume libre de cargas y gravámenes. *González v. Hawayek*, 71 D.P.R. 528, 533 (1950).

---

[4] No es este el caso para entrar en dicha discusión, ya que el tribunal de instancia enmarcó su determinación bajo la Ley de la Propiedad Horizontal. Véase sentencia en el caso CSI-91-114, págs. 14–15.

■ Nuestra Ley de la Propiedad Horizontal no excluye a los condominios comerciales de la aplicación de este tipo de restricción. Sin embargo, es de suma importancia tener presente que la institución del régimen ha evolucionado y se está utilizando con mayor frecuencia, como sucede en el caso de autos, para inmuebles dedicados únicamente a fines comerciales. *Cond. Prof. S.J. H. Centre v. P.R.F., Inc.*, supra. Por su carácter mercantil, tanto los centros comerciales constituidos bajo el régimen de propiedad horizontal como los instrumentos legales que los hacen viables, deben ser flexibles para responder mejor a las necesidades y la dinámica del mercado al cual sirven. Véase Audrey Loeb, *Condominium Law and Administration 8-1* (1989). Por lo tanto, la interpretación de dichos instrumentos legales debe tener como marco los propósitos de la legislación sobre propiedad horizontal y como norte la utilización idónea y flexible del régimen por ella creado.

En un condominio comercial se justifica aún más una interpretación restrictiva de las limitaciones al uso de los locales cuando, como en el caso de autos, se intenta restringir el uso comercial dispuesto en la escritura a un uso comercial particular. La utilización variada de un local es una de las cualidades más importante cuando el mismo se utiliza para propósitos comerciales. La flexibilidad brindada a esos efectos en gran medida influye sobre el precio y la mercadeabilidad. Audrey Loeb, *Condominium Law and Administration 8-1* (1989).

■ Por otro lado, nos parece pertinente el hecho de que el concepto "uso comercial" es más abarcador que el concepto "uso residencial". Así, cuando en una escritura se restringe el uso o destino de los apartamentos a fines residenciales, la estrechez del concepto informa clara y debidamente al adquirente las limitaciones impuestas a su derecho propietario. Sin embargo, cuando se restringe el uso de un local a "uso comercial", podemos pensar en una multiplicidad de actividades que se pueden ubicar bajo di-

cho calificativo. Es decir, el término es tan abarcador que en la mayoría de los casos equivale a una negación de un uso residencial, sin límites en cuanto a los posibles usos relacionados con el "comercio". De esta manera, el tercero interesado, aunque percibe una restricción a su derecho propietario, puede entender que se le ha brindado cierta flexibilidad en cuanto a los usos posibles de su propiedad.

■ Por lo tanto, entendemos que al intentarse restringir el uso comercial a un uso particular, la interpretación de las cláusulas restrictivas del dominio debe ser aún más estricta, pues se debe informar con mayor claridad a los nuevos titulares la existencia de una restricción adicional que modifica la amplitud del concepto de "uso comercial". Una limitación del derecho propietario de esa magnitud así lo justifica. Ésta debe surgir de la escritura matriz con suma claridad.

Es con base en este marco doctrinal que debemos interpretar y aplicar al caso de autos las disposiciones de la escritura constitutiva del régimen en el Centro, su correspondiente Reglamento y la Ley de la Propiedad Horizontal.

### III

El recurrente Vázquez señala que erró el tribunal sentenciador al concluir que de acuerdo con la escritura que sometió el Centro al régimen de propiedad horizontal y el correspondiente Reglamento existía una restricción al uso del local 10-A que lo limitaba a un supermercado.

Para mayor claridad en la exposición, atenderemos primeramente la interpretación de las cláusulas de la escritura y su valor restrictivo. Posteriormente, discutiremos el efecto conjunto de las cláusulas de la escritura y de la sección pertinente del Reglamento.

A. A la luz del marco doctrinal anteriormente expuesto, coincidimos con Vázquez en que no se constituyó limitación al uso del local 10-A que lo restringiese especí-

ficamente a supermercado. Nos parece claro que la cláusula de la escritura referente a "DESTINO DEL EDIFICIO, ANEXOS Y TERRENOS" limita el uso del Centro a "oficinas y locales comerciales" a tenor con la Ley de la Propiedad Horizontal. El lenguaje utilizado en ésta es específico, excluyente y cumple con la ley, ya que informa debidamente y sin ambigüedades a los nuevos adquirentes y a terceros la existencia de una limitación a su derecho propietario. *Cond. Prof. S.J. H. Centre v. P.R.F., Inc.*, supra.

Sin embargo, y contrario a lo alegado por el recurrido Soto y determinado por el Tribunal Superior, la frase "diseñado y construido para supermercado" no cumple con tal requisito. El hecho de que un local esté "diseñado y construido para supermercado" no quiere decir que no se pueda *utilizar* o *destinar* a otro propósito. El lenguaje utilizado en la escritura no es específico o excluyente. Tampoco limita aún más y de manera clara la limitación a uso comercial impuesta a los titulares en la escritura matriz. No se cumple aquí con la claridad y precisión requeridas por la Ley de la Propiedad Horizontal, pues dicha frase no informa *debidamente* y *sin ambigüedades* a los adquirentes y terceros la restricción al uso, si alguna.

En resumen, la frase "diseñado y construido para supermercado" no constituye una limitación al uso a tenor con la Ley de la Propiedad Horizontal.

B. De otro lado, Soto arguye que la sección 1103 del Reglamento fija una restricción al uso bajo la Ley de la Propiedad Horizontal. No estamos de acuerdo.

El Art. 36 de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1293, exige que en todo inmueble constituido en propiedad horizontal se inserte o agregue a la escritura de su constitución un reglamento. Dicho reglamento tiene como propósito establecer la "normativa por la que ha de regirse la administración del inmueble ...". E. Vázquez Bote, *Tratado teórico, práctico y crítico de derecho privado*

*puertorriqueño*, New Hampshire, Equity Publishing Corp., 1991, Vol. VII, pág. 219. Véase 31 L.P.R.A. sec. 1293.

■ Sin embargo, eso no quiere decir que el reglamento y la escritura se conviertan en una sola fuente de obligaciones para los participantes del régimen. En palabras de Batlle Vázquez:

> A diferencia de los estatutos, el reglamento ordena ciertos pormenores que requieren una mayor flexibilidad. No tienen la permanencia de aquéllos, y sujetándose a los estatutos y a la ley pueden ser cambiados por acuerdos de la mayoría de los propietarios conforme a los artículos 396 y 398 del Código civil, por su consideración de normas de buena administración y disfrute. Batlle Vázquez, *op. cit.*, pág. 191.

Igual ocurre en nuestro ordenamiento, ya que el Art. 37 de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1293a, permite enmendar el Reglamento del inmueble con el voto de dos terceras (2/3) partes de los titulares o de titulares y porcentajes de participación en los elementos comunes del inmueble.

■ En *Cond. Prof. S.J. H. Centre v. P.R.F., Inc.*, supra, tuvimos la oportunidad de enfrentarnos al potencial restrictivo conjunto de una cláusula de la escritura matriz de constitución del régimen y una sección del correspondiente reglamento. En dicho caso la escritura matriz disponía una restricción general al uso de los locales y hacía referencia directa al hecho de que se fijarían ciertos usos particulares en el reglamento. Ante dicha realidad resolvimos que el efecto conjunto de la escritura y el reglamento habían creado una limitación al uso de los apartamentos válida bajo la Ley de la Propiedad Horizontal. Al así hacerlo indicamos:

> Obsérvese que el Reglamento al ser insertado y *al formar parte en este caso de la Escritura Matriz en virtud de la cláusula vigésimosegunda de la escritura* y al especificar el uso de los apartamientos destinados a oficinas médicas, limitó aún más el concepto más amplio de "oficinas médicas" expresado en

la Escritura Matriz. (Énfasis en el original suprimido y énfasis suplido.) *Cond. Prof. S.J. H. Centre v. P.R.F., Inc.*, supra, pág. 505.

Así, en dicho caso reconocimos la posibilidad de crear una restricción al uso de un apartamento utilizando conjuntamente una cláusula de la escritura y una sección del correspondiente reglamento. Sin embargo, resaltamos allí el hecho de que en ese caso el reglamento, en virtud de una cláusula de la escritura que hacía referencia directa a éste, se hizo formar parte de la escritura.[5]

Aplicando las anteriores expresiones al caso de autos, entendemos que no se da aquí la situación presente en *Cond. Prof. S.J. H. Centre v. P.R.F., Inc.*, supra. En el caso de autos no existe una referencia directa al reglamento en la escritura similar a la existente en *Cond. Prof. S.J. H. Centre v. P.R.F., Inc.*, supra. Es decir, en la escritura matriz del Centro no se incluyó una referencia directa a que la restricción específica de uso a cada uno de los apartamentos se fijarían en el Reglamento. Por ende, ambas fuentes de obligaciones se mantuvieron separadas de manera que el reglamento no adquirió el valor obligacional de la escritura.

Más aún, en este caso, contrario a *Cond. Prof. S.J. H. Centre v. P.R.F., Inc.*, supra, no se estableció una limitación general al uso de los locales en la escritura que sería limitado a un uso particular en el Reglamento. Por el contrario, el Reglamento no establece limitación particular alguna al uso comercial de los locales dispuesto en la escritura. Así, el lenguaje utilizado en la sección 1103 del Reglamento, al prohibir la alteración de *"los propósitos para los cuales fue contruido el Centro Comercial de Humacao"*, nos parece dirigido a recalcar la limitación im-

---

[5] La cláusula específica de la escritura, en lo pertinente, indicaba: "Los siguientes apartamientos — serán destinados a oficinas médicas y se — utilizarán exclusivamente para tales fines según se dispone específicamente en el Reglamento para La Operación del Condominio Profesional San Juan —— Health Centre."

puesta en la cláusula de "DESTINO DEL EDIFICIO, ANEXOS Y TERRENOS" referente a la utilización de los apartamentos para "oficinas o locales comerciales". (Énfasis suplido.) Apéndice de la Solicitud de revisión, pág. 117.

Esta interpretación de la escritura está a tono con la interpretación que a través del tiempo de existencia del Centro le han otorgado sus titulares. Así se desprende del hecho que el uso de otro local descrito como "una sola planta diseñado y construido para teatro" ha sido variado sin que se creara controversia alguna entre los titulares.

. En resumen, resolvemos que la única restricción vigente al uso de los locales del Centro según su escritura y bajo la Ley de la Propiedad Horizontal es a los efectos de que sólo se utilicen para "oficinas o locales comerciales". Las palabras relativas a que el local 10-A fue "diseñado y construido para supermercado" son principalmente de índole descriptiva y no constituyen la limitación clara y precisa que debe formularse para que quede así restringido el uso.([6])

Por los fundamentos que anteceden, *revocamos la sentencia del tribunal de instancia que declaró que el local 10-A del Centro Comercial de Humacao tan solo se puede utilizar como supermercado. En consecuencia, declaramos sin lugar la demanda por el señor Soto.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rebollo López se inhibió.

---

([6]) En vista de la conclusión a la cual llegamos, resulta innecesario discutir el señalamiento del recurrente relativo a la aplicación de la doctrina de los actos propios. Dicho señalamiento estaba basado en variaciones realizadas por el recurrido Soto al uso de locales del Centro Comercial de Humacao descritos en la escritura de manera análoga a la descripción del local 10-A. Dichas descripciones no configuraron restricciones al uso de dichos locales a tenor con la Ley de la Propiedad Horizontal.