La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
La Junta de Directores del Condominio Torre de Capa-rra solicita la revocación del dictamen del Tribunal de Ape-laciones que determinó que es nulo un contrato suscrito entre el Consejo de Titulares de un condominio residencial sometido al régimen de propiedad horizontal y una compa-ñía privada de celulares que arrendó un espacio de la azo-tea del edificio para la instalación de antenas y otros equi-pos para transmitir su señal. Debemos resolver si una mayoría de los titulares puede arrendar un elemento co-mún de un condominio residencial a un tercero ajeno al régimen o si se requiere para ello un voto de unanimidad.
I
La Junta de Directores del Condominio Torre de Capa-rra (Junta de Directores) convocó una asamblea extraordi-naria el 20 de febrero de 2001 para la “aprobación de pro-puesta de arrendamiento de SunCom para instalación de *479 antenas en el área del techo de los ascensores”. En dicha convocatoria se indicó, conforme al Artículo 38-C de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 12936-3, que si en la primera reunión no se constituía el quorum para ce-lebrar la asamblea, se celebraría otra asamblea al día si-guiente, a la misma hora, en la que los presentes constitui-rían el quorum. La asamblea se celebró el 7 de marzo del mismo año, pero la asistencia no fue suficiente para esta-blecer el quorum. Al día siguiente, se celebró otra asam-blea y se llevó a votación la propuesta de la compañía Sun-Com para arrendar un espacio en la azotea para ubicar allí tres antenas de teléfonos celulares y equipo accesorio. La propuesta se aprobó por unanimidad de los presentes. Luego de la votación, el recurrido, Sr. Denjiro Rivera Ro-dríguez, titular de un apartamento en el Condominio Torre de Caparra, se presentó a la asamblea y le entregó una carta al administrador para que se leyera en voz alta, en la cual daba sus razones para oponerse a la aprobación de la propuesta.
El 28 de marzo de 2001 el señor Rivera Rodríguez, pre-sentó una comunicación dirigida a la Junta de Directores en la cual plasmó formalmente su oposición a la propuesta de SunCom. Posteriormente, sometió una querella en el Departamento de Asuntos del Consumidor (D.A.Co.) ale-gando que no se había presentado un contrato específico para la consideración de los titulares ni un plan para la disposición de los fondos. Asimismo, el 20 de abril de 2001 solicitó una orden de cese y desista para suspender los tra-bajos de instalación de equipos hasta que se aprobara el contrato conforme a derecho.
El 30 de noviembre de 2001 D.A.Co. desestimó la que-rella y resolvió que la Junta de Directores actuó conforme a su reglamento. En primer lugar, determinó que la convoca-toria cumplió con lo requerido, ya que la segunda asamblea no se celebró antes que transcurrieran veinticuatro horas desde la primera, y porque el Artículo 38-C de la Ley de la Propiedad Horizontal, supra, específicamente permite es-tablecer el quorum con los presentes en dicha segunda *480 asamblea. En segundo lugar, resolvió que el acuerdo con SunCom es válido, puesto que el reglamento del condomi-nio delega lo referente a este tipo de asuntos al Consejo de Titulares. En tercer lugar, D.A.Co. determinó que la apro-bación del contrato propuesto por una mayoría es sufi-ciente, ya que el contrato de arrendamiento es un acto de administración siempre que su vigencia sea de menos de seis años.
El señor Rivera Rodríguez solicitó la reconsideración del dictamen y, al ser ésta declarada “sin lugar”, recurrió el 4 de febrero de 2002 al Tribunal de Apelaciones. El foro ape-lativo revocó la resolución de D.A.Co. el 31 de marzo de 2003 y determinó que aunque la asamblea se constituyó válidamente, el contrato de arrendamiento es nulo porque tal acuerdo no era un mero acto de administración, pues variaba el uso y destino de un elemento común del condo-minio; por lo tanto, requería el consentimiento unánime de todos los titulares.
Posteriormente, se presentaron ante este Tribunal dos recursos de certiorari. En uno recurre D.A.Co. y en el otro la Junta de Directores del Condominio Torre de Caparra. Ambos alegaron que el arrendamiento de una parte de la azotea no altera el uso y destino del elemento común. El 26 de agosto de 2003 expedimos ambos recursos y pasamos a resolverlos conjuntamente.
I — I hH
 La Ley de la Propiedad Horizontal, Ley Núm. 104 de 23 de junio de 1958, según enmendada, 31 L.P.R.A. see. 1291 et seq., se creó con el propósito de establecer un régi-men legal que facilite la vida en convivencia para aprove-char mejor la escasez del terreno edificable en Puerto Rico. Serrano Muñoz v. Auxilio Mutuo, 171 D.P.R. 717 (2007); Maldonado v. Consejo de Titulares, 111 D.P.R. 427, 429 (1981); Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225, 242 (1978). Véase, además, la Exposición de Motivos *481 de la Ley Núm. 157 de 4 de junio de 1976, Leyes de Puerto Rico, pág. 485.
Aunque la propiedad, horizontal utiliza un espacio co-mún para el aprovechamiento de varios titulares, no se trata de la figura clásica de la. copropiedad del Código Civil. Nuestra doctrina de la horizontalidad, establecida en la ley y aclarada a través de la jurisprudencia, procura no circunscribir la naturaleza jurídica del régimen utilizando conceptos del Código Civil que no responden a la realidad económica y social de nuestra sociedad. En Arce v. Caribbean Home Const. Corp., supra, pág. 236, definimos la horizontalidad recogiendo la descripción del jurista Agustín Aguirre:
El nuevo Derecho contempla la horizontalidad como una ins-titución jurídica de caracteres propios, en que la propiedad singular y exclusiva de los pisos o apartamientos concurre, en inseparable unidad,, con el condominio sobre los elementos co-munes al servicio de aquéllos ....
En este régimen propietario, el bien común sirve para el disfrute adecuado de lo privado. Por esa razón y hacia ese fin existen los elementos comunes en el condominio y éstos se mantienen necesariamente en indivisión forzosa.
El Artículo 11 de la Ley de la Propiedad Horizontal enumera de forma ilustrativa aquellas áreas del inmueble que se presumen elementos comunes del condominio, y entre ellos menciona la azotea(1) 31 L.P.R.A. sec. 1291L Sobre el uso de estas áreas, el Artículo 14 dispone que “[c]ada titular podrá usar de los elementos comunes conforme a su destino, sin impedir o estorbar el legítimo derecho de los demás”. 31 L.P.R.A. see. 12911. Los elementos comunes existen para satisfacer las necesidades de la convivencia, por lo que el uso de éstos se tiene que aceptar como un derecho de todos. Además, cada titular de un apartamento sometido al régimen de propiedad horizontal
*482 es también dueño en condominio de los elementos comunes y disfruta del mismo derecho al uso que los demás condo-minos, independientemente de su porciento de partici-pación. Véase H. Racciatti, Propiedad por pisos o por departamentos, 3ra ed., Buenos Aires, Eds. Depalma, 1975, pág. 249.(2)
El ejercicio del derecho en relación con los elementos comunes no es absoluto, ya que existen dos condiciones principales que limitan su uso.(3) Primero, no se puede menoscabar el derecho de los demás titulares sobre estos elementos. Este es un principio general de la convivencia y de la necesidad de proteger el disfrute de la propiedad que es esencial a la horizontalidad, y que nuestra Ley de la Propiedad Horizontal recoge en su Artículo 14, supra.
El fin para el cual se ha destinado una cosa es otro lí-mite al uso de los elementos comunes que todos los titula-res deben respetar. El tratadista argentino Andrés Rafael Palmiero reconoce que la definición del destino de una cosa en el régimen de la propiedad horizontal tiene un signifi-cado particular:
En la propiedad horizontal se entiende por destino de las cosas, la realización, en los hechos, de las finalidades para las cuales se han sido constru[i]das, o en su caso, a las cuales han sido afectadas. A.R. Palmiero, Tratado de la propiedad horizontal, Buenos Aires, Eds. Depalma, 1974, pág. 259.
Una cosa puede tener un destino natural u objetivo que surge de la forma de la construcción y es la única razón por la cual ha sido creada.(4) Por otro lado, las cosas también *483 pueden tener un destino subjetivo. Esto es lo que Racciatti, op. cit., pág. 252, ha catalogado como “aquel que las partes convencionalmente han otorgado al bien de que se trate”.
Cuando las áreas comunes sean aptas para sostener va-rios usos, la escritura matriz puede servir para precisar el uso a que serán destinadas. Artículo 2 de la Ley de la Pro-piedad Horizontal, 31 L.P.R.A. see. 1291. Véase Soto Vázquez v. Vázquez Torres, 138 D.P.R. 282, 291-292 (1995).(5) El destino de las cosas y las demás limitaciones de uso de las áreas del condominio se plasman en los documentos constitutivos del régimen. Por lo tanto, es menester una lectura de la escritura matriz y del reglamento particular del condominio para determinar el uso al que se han des-tinado las áreas del condominio y si se contempla el uso de los elementos comunes por terceros extraños al régimen. La ley específicamente provee para que en la escritura ma-triz del condominio se precise el destino de toda área del inmueble, que sólo se puede variar mediante el consenti-miento de todos los titulares. Artículo 2 de la Ley de la Propiedad Horizontal, supra.
La unanimidad es un mecanismo para preservar los derechos fundamentales propios del dominio en un medio deliberativo en el que se aprueban asuntos que afectan adversamente el disfrute de la propiedad privada y en condominio. Asoc. C. Quadrangle Med. Ctr. v. Ramírez, 154 D.P.R. 699, 710 (2001). En cuanto a otros asuntos, que son más bien de conservación y administración de los elementos comunes, la ley solamente requiere la aprobación por una mayoría de los titulares. Por ejemplo, la ley faculta al Consejo de Titulares a “[e]ntender y decidir en los ... asuntos de interés general para la comunidad, y acordar las *484 medidas necesarias y convenientes para el mejor servicio común”. Art. 38 de la Ley de la Propiedad Horizontal, 31 L.RR.A. sec. 1293b(g). También, el Artículo 16 dispone:
Las obras necesarias para la conservación del inmueble y para el uso eficaz de los elementos comunes serán acordadas por la mayoría de los titulares.
Para toda obra que afecte los elementos comunes del inmue-ble [se] requerirá el consentimiento unánime de todos los titulares. (Enfasis nuestro.) 31 L.P.R.A. sec. 1291n.(6)
El término afectar amerita aclaración. Una obra que afecte los elementos comunes necesariamente debe incidir sobre el derecho propietario de los condominos para que la ley requiera la aprobación por unanimidad. Según el pro-fesor Godreau:
Por afectar debe entenderse aquello que menoscaba, amenaza o disminuye la efectividad o el valor de un elemento común ... [por ejemplo, las obras] que sin duda comprometen la eficacia, seguridad o solidez del edificio. Si una obra no afecta adversa-mente al condominio, entonces es una obra de conservación necesaria, de obras que redundan en un uso más eficaz de las áreas comunes —supuesto vislumbrado por el propio artícu-lo — , o de una mejora. (Énfasis en el original.) M.J. Godreau, El condominio: el régimen de propiedad horizontal en Puerto Rico, Río Piedras, Ed. Dictum, 1992, pág. 128.
Cualquier acuerdo que afecte a los elementos comunes necesita la aprobación unánime del Consejo de Titulares, ya que a éste le pertenece el ejercicio de las facultades propias del dominio sobre las áreas comunes. Alvarez Figueredo v. González Lamela, 138 D.P.R. 958, 966 (1995).
De esta forma se yuxtaponen los actos de conservación y los actos que afectan al elemento común, de manera análoga a los actos de administración y los actos de disposición en nuestro ordenamiento civil. Ahora bien, no *485 es posible encontrar en nuestro Código Civil definiciones categóricas de los actos de pleno dominio o de disposición. Tampoco hay consenso sobre ello en la doctrina, pues una marcada tendencia en los países civilistas niega que exista aisladamente un acto puro de administración ni de disposición. (7) T. Aguilera de la Sierra, Actos de adminis-tración, de disposición y de conservación, Madrid, Ed. Montecorvo, 1973.
No obstante, la Ley de la Propiedad Horizontal arroja luz sobre la facultad dispositiva de los titulares sobre los elementos comunes. Primeramente, es claro que el titular carece de todo poder para disponer de los elementos comu-nes aisladamente, para hacerlo debe concurrir con todos los demás titulares. Alvarez Figueredo v. González Lamela, supra. En segundo lugar, la ley impone el requisito de la unanimidad en ciertos asuntos porque alteran la forma o el destino de los elementos comunes.(8) Los actos de pleno dominio en la horizontalidad son, pues, aquellos que alte-ran la fachada del edificio, modifican el uso y destino de los bienes comunes del condominio, o de alguna forma inciden sobre las facultades dominicales de los titulares condominos. E. Vázquez Bote, Tratado teórico, práctico y crí- *486 tico de derecho privado puertorriqueño, San Juan, But-terworth de Puerto Rico, 1993, Vol. VIII, pág. 173. Por el contrario, resulta cónsono con el Artículo 16 de la ley, supra, que distingue entre los actos que permiten la aproba-ción por una mayoría y los que requieren unanimidad, el concluir que “aquellos acuerdos que no impliquen modifi-caciones al carácter material o registral del condominio, salvo clara expresión legislativa, no requerirán acuerdo unánime”. Brown III v. J.D. Cond. Playa Grande, 154 D.P.R. 225, 243 (2001), opinión concurrente del Juez Aso-ciado Señor Hernández Denton.
El Artículo 16 de la Ley de la Propiedad Horizontal, supra, también hace referencia a la facultad de aprobar obras con relación al “uso más eficaz” de los elementos comunes. Es necesario aclarar, sin embargo, que esta frase no tiene el propósito de facilitar la aprobación de medidas que de otra forma requerirán el consentimiento de todos los titulares. Por otra parte, en los condominios residenciales, el uso más eficaz no puede ser sinónimo de mayor productividad. A estos efectos, el profesor Godreau dice:
... la institución del Régimen, cuando de edificios dedicados a la vivienda se trata, busca primordialmente resolver el pro-blema de la escasez de espacio para construir las mismas. El interés a protegerse no puede ser, por tanto, una mayor “pro-ductividad” del inmueble —meta de la mejora — , sino, como bien expresa la Ley, su uso más eficaz. (Enfasis en el original.) Godreau, op. cit., pág. 123.
Acorde a lo anterior, el dominio que posee el titular individual sobre el uso y disfrute de los elementos comunes encuentra su límite en las restricciones que surjan de la ley, la escritura matriz y la necesidad de coordinar la vida en comunidad. Artículo 15 de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1291m. Por lo tanto, no sería lícito explotar un área para uso comercial si trastoca el uso destinado del área según los distintos documentos constitutivos del régimen.
*487 Nunca hemos resuelto si un acuerdo que le cede dere-chos a un tercero sobre algún elemento común de un con-dominio de viviendas altera su uso y destino de manera que requiera la aprobación unánime de todos los titulares. La Ley de la Propiedad Horizontal es muda en cuanto a este particular. Los derechos sobre los elementos comunes solamente se definen con relación a los condominos, pues son ellos los titulares de dichas áreas comunes, pero la ley no vislumbra la cesión del uso a una persona ajena al ré-gimen que ningún derecho tiene en cuanto al disfrute de los apartamentos. Ante este silencio, las cláusulas particu-lares de la escritura matriz y del reglamento sobre las res-tricciones al uso y el destino particular del área cobran mayor importancia. Art. 2 de la Ley de la Propiedad Horizontal, supra; Soto Vázquez v. Vázquez Torres, supra.
I — í HH
Al recurrir al derecho comparado en la búsqueda de principios y criterios que nos ayuden a resolver la contro-versia presente, encontramos que el enfoque adoptado en otras jurisdicciones en cuanto a los elementos comunes y el derecho de los titulares a disponer de dichas áreas no ne-cesariamente corresponde a nuestra filosofía de la horizontalidad. Igualmente, distintos tratadistas conside-ran la naturaleza jurídica de la propiedad horizontal como un derivado de las figuras de la copropiedad y el derecho de superficie,(9) y no la consideran una institución sui géneris según contemplan tanto nuestra ley como la ley cubana de la cual provienen muchos de nuestros principios de la horizontalidad. Arce v. Caribbean Home Const. Corp., supra.
Contrario a nuestra ley, que enumera varias instancias en las que se impone la unanimidad como requisito para la *488 validez de ciertos actos en el condominio, la ley de propie-dad horizontal española, en su Artículo 16, establece que la unanimidad se requerirá solamente para aprobar o modi-ficar reglas en el título constitutivo o en los estatutos del condominio.(10) Al amparo de esta disposición, en el derecho español se ha preferido brindar mayor protección al dere-cho de la mayoría sobre los derechos propietarios de los titulares en condominio. La razón, según expresan Manuel Pons González y Miguel Ángel del Arco Torres en referen-cia a los comentarios del profesor Martín Orantes, es que “la exigencia de consentimiento pleno, pone al total de la comunidad a los pies de cualquiera de los comuneros, pro-duciéndose muchas veces situaciones lamentables de falta de agilidad y armonía en la solución de los problemas co-munitarios, ante la imposibilidad de conseguir la ansiada unanimidad”. (Énfasis en el original.) M. Pons González y M.A. del Arco Torres, Régimen jurídico de la propiedad horizontal, 6ta ed., Granada, Ed. Comares, 1995, pág. 564. Véase, además, A. Ventura-Traveset y González, Derecho de Propiedad Horizontal, 4ta ed., Barcelona, Ed. Bosch, 1980, págs. 218-221 y 356-359. En cuanto a esto, la Au-diencia Provincial de Madrid, en la Sentencia del 27 de diciembre de 1991, Sec. 10.a, AP Madrid, ha dicho que:
Hay que entender, por tanto, que no todo acuerdo que afecte a cualquier regla de las del título constitutivo o de los estatutos —sea cual friese la importancia real y social de la misma— exige la unanimidad sino sólo aquellos acuerdos que afectan de modo esencial a las reglas verdaderamente constitutivos o, *489 si se quiere, de carácter materialmente “constitucional” para la comunidad de que se trate. Sólo desde esta perspectiva cabe armonizar los. derechos de la mayoría, democráticamente constituida, con los de la minoría que, en todo caso, siempre pueden ser tutelados por la autoridad judicial.(11) Pons González, op. cit., págs. 563-564.
De forma consecuente con este enfoque, el tratadista italiano Lino Salis y Juan Fuentes Lojo, en sus anotaciones de Derecho español a la obra del primero, opinan que ceder a un tercero el derecho a usar los elementos comunes es válido si concurre una mayoría de los titulares. L. Salis, El condominio en los edificios, Barcelona, Ed. Bosch, 1968, págs. 86-87. Hernán Racciatti coincide con este criterio. Racciatti, op. cit., págs. 264-266. Entienden estos tratadis-tas que si la facultad de disfrutar de los elementos comu-nes se puede ejercer de forma autónoma y desvinculada del goce del apartamento privado, entonces la mayoría de los titulares podría ceder su uso a un tercero, siempre y cuando al así hacerlo no se menoscabe el uso y disfrute de los demás titulares y que con ello no se infrinjan las dispo-siciones de la escritura matriz o del reglamento del condominio. Sin embargo, al aplicar este criterio, estos tra-tadistas no distinguen entre condominios destinados a uso residencial y los destinados a uso comercial. Tampoco se refieren a la posibilidad de destinar el elemento común por voto meramente mayoritario a un uso completamente dis-tinto del edificio en su totalidad, como sucede al destinar un bien común en un condominio residencial a un uso comercial.
*490 Por su parte, la ley italiana de 1934, posteriormente recogida en el Codice Civile de 1942, no hace referencia alguna al requisito de unanimidad y prohíbe algunos actos que nuestro ordenamiento permitiría mediante el consenso unánime.(12) El Codice Civile, en sus secciones respecto al condominio en los edificios, específicamente veda la ejecu-ción de obras que alteren la fachada arquitectónica o la seguridad del edificio, aunque medie la aprobación de to-dos los titulares con todas las participaciones en el condominio.(13) G. Branca, Commentario del Codice Civile, Libro Terzo-Della Proprietá, 6ta ed., Bologna, Ed. Nicola Zanichelli, 1982, págs. 423-426 y 437; G. Terzago, II condominio, Varese, Ed. Giuffré, 1981, págs. 130-135; Salis, op. cit., págs. 91-95. Sin embargo, se ha interpretado que no se prohíbe toda alteración de este tipo, sino aquella que constituya “una modificación material de la cosa que su-ponga alteraciones en la entidad sustancial o cambio en el destino propio de la cosa”. (Enfasis nuestro.) Cass., 25 julio 1953, núm. 2.531; Traducción en Salis, op. cit., pág. 92 esc. 3. Se trata, pues, de un régimen que prohíbe absoluta-mente ciertos actos o “innovaciones” y refiere todo lo demás a decisión mayoritaria.
En Puerto Rico, el requisito de la unanimidad se utiliza para preservar la esencia de la propiedad y proteger al consumidor, dueño de su apartamento y de los ele- *491 mentos comunes, de los actos que puedan llevar a cabo los órganos administrativos y ejecutivos que choquen o de al-guna manera incidan sobre las facultades dominicales de los titulares. Nuestra doctrina de la horizontalidad esta-blece que los elementos comunes son para el disfrute de los titulares, aunque se clasifiquen como necesarios o volunta-rios, generales o limitados. Véanse: Arce v. Caribbean Home Const. Corp., supra, págs. 235-236; Vázquez Bote, op. cit., pág. 169. El Artículo 13 de la ley dispone que “[l]os elementos comunes, generales y limitados, se mantendrán en indivisión forzosa y no podrán ser objeto de la acción de división de la comunidad”. 31 L.P.R.A. sec. 1291k. Por eso hemos dicho que la horizontalidad no tolera que se separe el uso y aprovechamiento de los elementos comunes del disfrute exclusivo del apartamento, ya que uno sirve para el disfrute del otro. Asoc. de Condominos v. Centro I, Inc., 106 D.P.R. 185, 194 (1977). Sin embargo, este principio de la indivisión forzosa no incide sobre la facultad del Consejo de Titulares de ceder el uso de aquellos elementos comunes que no sean imprescindibles para el disfrute por todos los titulares de sus derechos y permitir de esa forma que dichos elementos se dediquen al disfrute exclusivo y privado de uno o varios apartamentos. Ahora bien, lo podrá hacer solamente mediando el consentimiento unánime de todos los titulares. Art. 12 de la ley, 31 L.P.R.A. sec. 1291j.(14) En fin, la Ley de la Propiedad Horizontal específicamente crea los elementos comunes para servir a los condominos. El Consejo de Titulares, como entidad creada por ley para ejercer las facultades del dominio sobre los elementos co-munes, puede exceptuar ciertos elementos de ser usados por todos los titulares, pero para ello el ordenamiento re-quiere la unanimidad. Alvarez Figueredo v. González Lámela, supra. Acorde a este esquema regulatorio y a la po- *492 lítica a la que responde, trastornaría la naturaleza del ré-gimen el ceder a terceros el uso de los elementos comunes sin la anuencia unánime de los titulares:
IV
En el caso ante nuestra consideración, el Consejo de Ti-tulares suscribió un contrato de arrendamiento con una compañía privada de celulares arrendándole una parte de la azotea del edificio. La Junta dé Directores sostiene que tal contrato de arrendamiento es un mero acto de adminis-tración y fundamenta la validez del acuerdo en unas dis-posiciones del reglamento del condominio. Particular-mente, el Artículo 34 del reglamento, que establece lo siguiente:
El Consejo de Titulares acordará, lo antes posible, todo lo relacionado con la colocación de antenas de radio y televisores, teléfonos; aire acondicionado, ventiladores y otros aparatos por el estilo y de los objetos a que se refiere el artículo anterior. (Énfasis nuestro.) Expediente CC-2003-365, Anejo B, pág. 40.
El Artículo 33 del reglamento, por su . parte, plasma los deberes de los condominos y los límites a los derechos sobre sus áreas privativas y comunes.(15) En lo pertinente, este artículo establece el deber de cada condomino de
[h]acer ejecutar por su propia cuenta, todas las reparaciones necesarias en las instalaciones internas de ... teléfono y aire acondicionado, hasta las líneas maestras, así como .... instala-ciones sanitarias y de aire acondicionado, pue[r]tas, ventanas, •lámparas y todos los demás accesorios pertenecientes a su apartamiento. (Énfasis nuestro.) Expediente CC-2003-365, Anejo B, pág. 40.
*493 Éstos son los objetos que señala el Artículo .34 cuando describe “otros aparatos por el estilo”.
Estas disposiciones reglamentarias configuran la facul-tad sobre los bienes comunes que proveen los Artículos 16 y 38 de la Ley de la Propiedad Horizontal, supra, para el uso más eficaz y el mejor servicio común. Su lectura conjunta nos lleva a concluir que el Artículo 34 del reglamento del condominio faculta al Consejo de Titulares para acordar la ubicación de estos teléfonos, acondicionadores de aire y an-tenas de aparatos pertenecientes a titulares individuales en áreas comunes del condominio porque son “accesorios ... a su apartamento”. De esta forma el Artículo 34 del regla-mento sirve para fomentar la armonía en el condominio y asegura a cada titular el derecho al uso y disfrute de su propiedad privada y los elementos comunes. Una lectura integral de ambas disposiciones reglamentarias revela la intención de acomodar el mejor uso de los elementos comu-nes para los titulares, sin menoscabar el derecho de los demás condominos. Nada de lo dispuesto en estos artículos sugiere el poder de ceder el uso de los elementos comunes a personas ajenas al condominio. Tomando en cuenta que no se puede derivar válidamente de un reglamento más facul-tades que las dispuestas en la ley que le da vida, no pode-mos interpretar las disposiciones del reglamento citadas para permitir el arrendamiento de la azotea para fines co-merciales por el voto de una mayoría cuando la Ley de la Propiedad Horizontal impone el requisito de la unanimi-dad para alterar el uso y destino de los elementos del con-dominio y afectar el uso de éstos por los demás titulares. Artículo 16 de la ley, supra.
Tampoco podemos perder de vista que la controversia que debemos resolver ocurre en el contexto de un condomi-nio residencial. En otras ocasiones hemos interpretado la Ley de la Propiedad Horizontal para proteger los intereses particulares de los condominos según la naturaleza del condominio. Véase Soto Vázquez v. Vázquez Torres, supra, pág. 292. La productividad que persiguen los titulares de *494 condominios de vivienda no se manifiesta de la misma ma-nera en los condominios destinados a oficinas profesionales o al comercio. Godreau, op. cit, pág. 123. Por esa razón, estamos ante una preocupación legítima que debemos juz-gar en aras de proteger el derecho de los titulares sobre los bienes de su propiedad, sin menoscabar el disfrute del am-biente residencial del condominio.
Los elementos comunes existen para el disfrute de los condominos, de acuerdo con el fin que persigue la horizontalidad. Arce v. Caribbean Home Const. Corp., supra; Vázquez Bote, op. cit., pág. 169. De igual forma, los actos de administración y los actos que requieren unanimidad de los condominos se definen de acuerdo con ese fin. Por eso no basta con señalar que el contrato de arrendamiento es un acto de administración en otros contextos jurídicos; en la propiedad horizontal operan otras consideraciones. Véase De la Sierra, op. cit., págs. 108-109.
El arrendamiento de un elemento común en un condominio residencial para fines comerciales evidentemente altera el uso y destino de dicho elemento y requiere la unanimidad. La azotea, por su naturaleza, puede tener varios usos, pero al estar ubicada en un condominio destinado al uso residencial, ese destino constituye una restricción que limita los varios usos que de otra manera podría sostener, a menos que los documentos constitutivos del régimen particular del condominio permitan usos no residenciales. Además, la cesión del uso de elementos comunes a terceros que ninguna relación tienen con el condominio afecta la configuración de los elementos comunes porque altera la naturaleza del régimen comunitario sin la aprobación de la todos los condominos, según requiere la ley.
Por los fundamentos antes expuestos, resolvemos que es nulo el contrato que ceda derechos sobre el uso de los ele-mentos comunes a un tercero ajeno al régimen de propiedad horizontal sin el consentimiento unánime de los titulares. Resolvemos igualmente que el arrendamiento de un ele-mento común de un condominio residencial para fines co- *495 merciales constituye un acto que altera su uso y destino. Por consiguiente, el contrato de arrendamiento entre el Consejo de Titulares y SunCom es nulo porque altera el uso y destino de la azotea, y cede a terceros el uso de los elemen-tos comunes en un condominio de vivienda sin el consenti-miento unánime de todos los titulares. Acorde con lo anterior, se dictará sentencia en la que se confirma la sentencia del Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton disintió con una opinión escrita, a la cual se unió la Juez Asociada Señora Rodríguez Rodríguez.

 A diferencia del techo que sólo cubre el edificio, la azotea es “la cubierta llana de un edificio dispuesta para poder andar por ella ...”. Consejo de Titulares v. Vargas, 101 D.P.R. 579, 583 (1973).

 El Artículo 3 de la ley argentina de propiedad horizontal tiene una redacción semejante a la nuestra: “Cada propietario podrá usar de los bienes comunes con-forme a su destino, sin peijudicar o restringir el legítimo derecho de los demás”. Ley N ° 13.512 B.O. 18/10/1948.

 Sobre este tema, véase E.J. Laje, La propiedad horizontal en la legislación argentina, 2da ed., Buenos Aires, Ed. Abeledo-Perrot, 1957, págs. 205-207, que a su vez cita más legislación extranjera que dispone lo mismo.

 Véanse: Laje, op.cit, pág. 206; E. Vázquez Bote, Tratado teórico, práctico y crítico de derecho privado puertorriqueño, San Juan, Butterworth de Puerto Rico, Vol. VIII, 1993, págs. 170-Í71; H. Racciatti, Propiedad por pisos o por departamen- *483 tos, 3ra ed., Buenos Aires, Ediciones Depalma, 1975, pág. 252; A.R. Palmiero, Tra-tado de la Propiedad Horizontal, Buenos Aires, Eds. Depalma, 1974, pág. 259.

 Decidimos en Soto Vázquez v. Vázquez Torres, supra, darle una mirada particular a las cláusulas de los documentos constitutivos que restringen el uso de las áreas del condominio en los condominios comerciales y profesionales, a base del propósito mercantil que motivó su constitución.

 La Ley Núm. 153 de 11 de agosto de 1995 enmendó dicho artículo para eliminar el segundo párrafo del artículo y añadió una disposición particular sobre la aprobación de obras de mejoras en elementos comunes. Sin embargo, la Ley Núm. 43 de 21 de mayo de 1996 la derogó restableciendo así el requisito de la unanimidad para obras que “afecten” a los elementos comunes.

 Sobre el acto de administración, el doctor De la Sierra concluye que:
“El acto de administración es el acto dirigido a obtener de un bien o patrimonio los rendimientos de que es susceptible. Esto es el concepto general, referido al acto de administración en sentido puro, al margen de toda institución jurídica ....
“Cuestión completamente distinta es la referente a la persona del administra-dor. ... El administrador puede realizar actos de administración, negocios obligato-rios y de disposición. Para juzgar de su aptitud, deberá considerarse la naturaleza del acto; las cualidades personales, en sentido jurídico, del administrador (titulari-dad, capacidad, legitimación); finalmente, entran en juego las reglas particulares de la institución, con arreglo a sus especiales características.” (Énfasis nuestro.) T. Agui-lera de la Sierra, Actos de administración, de disposición y de conservación, Madrid, Ed. Monteeorvo, Madrid, 1973, págs. 108-109.

 Véanse el Artículo 9 sobre la hipotecabilidad de los elementos comunes, 31 L.P.R.A. sec. 1291g; el Artículo 13 sobre la indivisión de los elementos comunes, 31 L.P.R.A. sec. 1291k; el Artículo 16 sobre las obras que “afecten” los elementos comu-nes, 31 L.P.R.A. sec. 1291n; Artículo 18 sobre la facultad de realizar obras o cons-trucciones que comprometa la solidez del edificio, 31 L.P.R.A. see. 129 lp; el Artículo 32 sobre la segregación de los elementos comunes, 31 L.P.R.A. sec. '1292j. Véase, además, Vázquez Bote, op. cit., 173.

 Véase O. Gómez Gil, La Propiedad Horizontal en Cuba, La Habana, Ed. Lex, 1954, págs. 49 y 54.

 “Los acuerdos de la junta de propietarios se sujetarán a las siguientes nor-mas: Primera.-La unanimidad sólo será exigible para la validez de los que impliquen aprobación o modificación de reglas contenidas en el título constitutivo de la propie-dad o en los estatutos .... Tercera.-Para la validez de los demás acuerdos bastará el voto de la mayoría del total de los propietarios que, a su vez, representen la mayoría de las cuotas de participación.” Art. 17 de la Ley 49/1960, de 21 de julio, sobre Propiedad Horizontal. Como la privatización o desafectación de los elementos comu-nes afecta el título constitutivo, e igualmente la imposición de cargas sobre dichas áreas y la alteración del destino de la cosa, estos actos requieren la unanimidad bajo la ley española. Véanse: S. 22 oct. 1993, TS; S. 30 jun. 1986, TS; S. 2 die. 1983, AT Pamplona.

 Asimismo, la Audiencia Provincial de Murcia, estableció que el consorcio de propietarios:
“[C]omo órgano de expresión de una voluntad conjunta ... debe prevalecer frente a los propietarios individuales, evitando que la extensión desmedida a los supuestos que reclaman unanimidad de los partícipes supla en la práctica la voluntad de la mayoría de los interesados para el mejor disfrute del inmueble, reservándose en consecuencia de la exigencia de unanimidad a los casos estrictamente comprendidos en la regla 1.a del art. 16 de la Ley de Propiedad Horizontal.” Sentencia del 29 de enero de 1991, Sec. 3.a, AP Murcia, citado en M. Pons González y M.A. del Arco Torres, Régimen-jurídico de la propiedad horizontal,'6ta ed., Granada, Ed. Comares, 1995, pág. 572.

 La ley argentina de propiedad horizontal, que influyó en la redacción de la ley cubana, a su vez fue influenciada por la ley italiana de 1934. Así opinó Orlando Gómez Gil en su obra La Propiedad Horizontal en Cuba'. “En nuestra opinión, la Ley argentina es una de las mejores que existen, no sólo por su cohesión y claridad, sino por la forma amplia como regula la institución sin apartarse un momento de su verdadero espíritu.” Gómez Gil, op. cit., pág. 33.

 El texto del Artículo 1120 del Codice Civile dispone:
“I condomini, con la maggioranza indicata dal quinto comma dell’art. 1136, pos-sono disporre tutte le innovazioni dirette al miglioramento o all’uso piü comodo o al maggior rendimento delle cose comuni.
“Sono vietate le innovazioni che possano recare pregiudizio alia stabilitá o alia sicurezza del fabbricato, che ne alterino il decoro architettonico o che rendano talune parti comuni dell’edificio inservibili all’uso o al godimento anche di un solo condomino.” G. Branca, Commentario del Codice Civile, Libro Terzo-fDella Proprietá, 6ta ed., Bologna, Ed. Nicola Zanichelli, 1982, pág. 423.

 La jurisprudencia ha profundizado en numerosas ocasiones en el tema de la privatización de los elementos comunes cuando éstos no son indispensables para el disfrute exclusivo del apartamento. Véanse: De la Cruz v. Toro Sintes, 112 D.P.R. 650 (1982); Costa Linda, Inc. v. Registrador, 109 D.P.R. 861 (1980); Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225 (1978); Consejo de Titulares v. Vargas, supra; Castle Enterprises, Inc. v. Registrador, 87 D.P.R. 775 (1963).

 Él artículo prohíbe colocar objetos de propaganda o avisos en las paredes exteriores y en toda área común, tender ropa en las ventanas, sacudir alfombras en las barandas, echar basura fuera de los lugares propios para ello, permitir que las mascotas permanezcan en las áreas comunes, usar las áreas comunes como lugares para el depósito de objetos o de reuniones de manera que entorpezcan el tránsito, o hacer modificaciones en las dependencia o instalaciones de los apartamentos.